# WIGHT *v.* DAVIDSON.

APPEAL FROM THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 283. Argued October 26, 29, 1900.—Decided April 29, 1901.

A constitutional right against unjust taxation is given for the protection of private property, but it may be waived by those affected, who consent to such action to their property as would otherwise be invalid.

It was within the power of Congress, by the act of March 3, 1899, c. 431, 30 Stat. 1344, to extend S Street in the District of Columbia, to order the opening and extension of the streets in question, and to direct the Commissioners of the District to institute and conduct proceedings in the Supreme Court of the District to condemn the necessary land; and it was also competent for Congress, in said act, to provide that, of the amount found due and awarded as damages for and in respect of the land condemned for the opening of said streets, not less than one half thereof should be assessed by the jury in said proceedings against the pieces and parcels of ground situate and lying on each side of the extension of said streets and also on all or any adjacent pieces or parcels of land which will be benefited by the opening of said streets as provided for in said act; and that the sums to be assessed against each lot or piece or parcel of ground should be determined and designated by the jury, and that, in determining what amount should be assessed against any particular piece or parcel of ground, the jury should take into consideration the situation of said lots, and the benefits that they might severally receive from the opening of said streets.

The order of publication gave due notice of the filing of the petition in this case, and an opportunity to all persons interested to show cause why the prayer of the petition should not be granted; and operated as a notice to all concerned of the pending appointment of a jury, and that proceedings would be had under the act of Congress.

The act of March 3, 1899, was a valid act, and the proceedings thereunder were regular and constituted due process of law.

The Court of Appeals, in regarding the decision in *Norwood* v. *Baker*, 172 U. S. 269, as overruling previous decisions of this court in respect to Congressional legislation as to public local improvements in the District of Columbia is overruled.

CONGRESS, by an act approved March 3, 1899, entitled " An act to extend S street in the District of Columbia, and for other purposes," 30 Stat. 1344, c. 431, enacted as follows:

" SECTION 1. That within thirty days from the passage of this

act the Commissioners of the District of Columbia be and they are hereby authorized and directed to institute by a petition in the Supreme Court of the District of Columbia, sitting as a District Court, a proceeding to condemn the land necessary to open and extend S, Twenty-second and Decatur streets through lots forty-one and forty-two of Phelps and Tuttle's subdivision of Connecticut Avenue Heights, part of Widow's Mite: *Provided*, That the owners of the 'Kall' tract dedicate the land in said tract contained within the lines of said street: *And provided further*, That of the amount found due and awarded as damages for and in respect of the land condemned under this section for the opening of said streets, not less than one half thereof shall be assessed by the jury in said proceedings against the pieces and parcels of ground situate and lying on each side of the extension of said streets, and also on all or any adjacent pieces or parcels of land which will be benefited by the opening of said streets as herein provided."

\*  \*  \*  \*  \*  \*  \*  \*

" Sec. 5. That the proceedings for the condemnation of said lands shall be under and according to the provisions of chapter 11 of the Revised Statutes of the United States relating to the District of Columbia, which provide for the condemnation of land in said District for public highways."

" Sec. 7. That the sums to be assessed against each lot and piece and parcel of ground shall be determined and designated by the jury, and in determining what amount shall be assessed against any particular piece or parcel of ground, the jury shall take into consideration the situation of said lots, and the benefits that they may severally receive from the opening of said streets."

On March 31, 1899, the Commissioners filed a petition in the Supreme Court of the District, alleging that the owners of the Kall tract had dedicated to the District of Columbia, for highway purposes, the land in said tract contained within the lines of S, Twenty-second and Decatur streets; that a map of the proposed extension of said streets, showing the number and designation of lots affected, the names of the owners thereof, and the areas of land required for the extension, had been prepared and a copy thereof annexed to the petition; and praying the

court to direct the marshal of the District to summon a jury to be and appear on the premises on a day specified, to assess the damages, if any, which each owner of land through which said streets were proposed to be extended, might sustain by reason thereof, and that such other and further orders might be made and proceedings had as were contemplated by the said act of Congress and by chapter 11 of the Revised Statutes of the United States, relating to the District of Columbia, to the end that a permanent right of way for the public over said lands might be obtained and secured for the extension of said streets.

On April 3, 1899, an order of publication was made by the court directing all persons interested in the proceedings to appear in the court on or before the 22d day of April, 1899, and show cause, if any they have, why the prayer of said petition should not be granted, and that a copy of the order should be published in the Washington Post and the Washington Times newspapers at least six times and in the Washington Law Reporter once before the said 22d day of April, 1899.

On July 21, 1899, it was ordered by the court that, whereas notice by advertisement had been duly published, a jury should be summoned to be and appear upon the premises to assess the damages, if any, which each owner of land may sustain by reason of the condemnation of the land necessary to open and extend said streets, as prayed in said petition, and directing that of the amount due and awarded as damages by said jury in respect of the land condemned for the opening of said streets not less than one half thereof should be assessed by said jury against the pieces and parcels of ground situated and lying on each side of the extension of said streets, and also on all or any adjacent pieces or parcels of land which would be benefited by the opening of said streets; and to further proceed in accordance with the act of Congress approved March 3, 1899.

On August 30, 1899, there was filed in the Supreme Court of the District a return or report by the marshal, setting forth the appointment and qualification of the jurors, and a statement of the proceedings of said jury in taking testimony and hearing arguments of counsel. With the report of the marshal there was also filed a verdict in writing by the jury in the following terms:

" In the Supreme Court of the District of Columbia, holding a District Court for said District.

" *In re* extension of S, Twenty-second and Decatur streets. —No. 549.

" We, the jury in the above-entitled cause, hereby find the following verdict and award of damages for and in respect of the land condemned and taken necessary to open and extend S, Twenty-second and Decatur streets through lots forty-one and forty-two of Phelps and Tuttle's subdivision of Connecticut Avenue Heights, part of Widow's Mite, as shown on the plat or map filed with the petition in this cause, as set forth in schedule 1, hereto annexed as part hereof; and we, the jury aforesaid, in accordance with the act of Congress, approved March 3, 1899, for the extension of said streets, do hereby assess the sum of $26,000, being not less than one half of the damages so, as aforesaid, awarded in schedule 1 against the pieces and parcels of land situate and lying on each side of the extension of said streets, and also on adjacent pieces or parcels of land which we find will be benefited by the extension of said streets, as set forth in schedule 2, hereto annexed as part hereof."

By schedule 1, annexed to the award, it appears that the jury awarded to the owners of parts of lots 41 and 42 of Phelps and Tuttle's subdivision of Widow's Mite, as damages for land within the lines of S and Twenty-second streets extended, the sum of $36,000, and to the owners of part of lot 41, included in the lines of Decatur place extended, the sum of $16,000.

By schedule 2 it is shown that the jury apportioned one half of said damages among the owners of pieces or parcels of land benefited, and that among those found to be benefited were the owners of the Kall tract, and against whose lands there were assessed various sums amounting, in the aggregate, to $14,000.

On September 19, 1899, the Supreme Court of the District entered an order confirming the award and assessment, unless cause to the contrary should be shown on or before the 4th day of October, 1899, and directing that a copy of said order should be published once in the Washington Law Reporter and twice in the Evening Star before that date; and further ordering that the marshal should serve a copy of the order per-

sonally on all the owners of land condemned and all the owners of land assessed in said verdict, with one half of the damages awarded therein, who might be found within the District of Columbia, and if not found therein, then by mailing a copy thereof to the place of abode or last known place of residence of each owner or owners.

On September 29, 1899, the marshal returned that he had served a copy of the order personally on, among others, the appellees, and had mailed copies to such parties as resided without the District.

On October 4, 1899, the appellees filed exceptions to the confirmation of the award and finding of the jury, as to the owners of the tract of land known in the proceedings as the Kall tract. The exceptions were as follows :

" First. Said award of damages and finding of the jury is not warranted by the statute under which these proceedings are had and taken, and by a proper construction thereof no damage can be assessed against said tract of land, or any part thereof, or these respondents as owners of said land.

" Second. Because said act is unconstitutional and void, in that it contains no provision for notifying the owners of property to be assessed in advance of said assessment, nor at any time pending the consideration of the cause by the jury, nor is any mode designated by the statute by which the objections of the owners whose land is sought to be charged with benefits can be properly heard or considered, or by which any objection they may have to such assessment might be made effective, and for other vices and defects apparent on the face of the statute.

" Third. Because the statute under which said assessment is made is a statute relating to a condemnation of land solely, and contains no provision touching the assessment of benefits, and was not intended to provide for such assessment.

" Fourth. Because the statute authorizing the extension of said streets, and the condemnation of land therefor, and the assessment of benefits, is, when taken in connection with the statute under which the condemnation proceedings were to be conducted, inconsistent and incapable of enforcement as to the

assessment of benefits against property forming no part of that sought to be condemned.

"Fifth. Because the description of the property sought to be charged with the assessment of benefits is inaccurate, insufficient and defective.

"Sixth. Because said award of damages and finding of the jury in that behalf are excessive, unjust and unreasonable.

"These respondents therefore, each and severally, request and demand said award and finding to be set aside, and that a new jury be impanelled in accordance with the provisions of the statute in such case made and provided."

On November 18, 1899, after argument, the exceptions were overruled, and the verdict, award and assessment were in all respects confirmed. Thereupon the cause was taken on appeal to the Court of Appeals of the District of Columbia. On April 25, 1900, the order and decree of the Supreme Court of the District were reversed by the said Court of Appeals, and the cause was remanded to the Supreme Court of the District, with directions to vacate such order or decree and for such other proceedings therein, if any, as might be proper and not inconsistent with the opinion of the Court of Appeals. 16 D. C. App. 371. An appeal was thereupon allowed to this court.

*Mr. Clarence A. Brandenburg* and *Mr. Andrew B. Duvall* for appellants.

*Mr. B. F. Leighton* for appellees.

Mr. Justice Shiras, after stating the case, delivered the opinion of the court.

This is an appeal from a decree of the Court of Appeals of the District of Columbia reversing an order or decree of the Supreme Court of the District confirming an assessment upon lands of the appellees for alleged benefits accruing from the opening of certain streets adjoining such lands, and presents for determination the constitutionality of an act of Congress, approved March 3, 1899, under which the assessment complained of was made.

It may well be doubted whether the appellees are in a position to question the validity of the statute. They are the owners of the "Kall" tract mentioned in the first section of the act, and with respect to which it was made a condition that the owners should dedicate the land in said tract contained within the lines of the streets to be extended; and, it appears by the record, that, in order to procure the desired action of the Commissioners, they did dedicate to the District of Columbia for highway purposes the land in said tract contained within the lines of S, Twenty-second and Decatur streets.

Prior to the filing of the petition of the Commissioners, the authorities of the District had taken no steps towards the contemplated extension of these streets. In fact, under the act they had no power to do so. The power was called into action by the dedication of the Kall tract. By such dedication the appellees put the act into operation, and voluntarily subjected themselves to its provisions, including the mode of assessment. The constitutional right against unjust taxation is given for the protection of private property, and may be waived by those affected who consent to such action to their property as would otherwise be invalid.

" Under some circumstances, a party who is illegally assessed may be held to have waived all right to a remedy by a course of conduct which renders it unjust and inequitable to others that he should be allowed to complain of the illegality. Such a case would exist if one should ask for and encourage the levy of the tax of which he subsequently complains; and some of the cases go far in the direction of holding that a mere failure to give notice of objections to one who, with the knowledge of the person taxed, as contractor or otherwise, is expending money in reliance upon payment from the taxes, may have the same effect." Cooley on Taxation, 573 ; *Tagh* v. *Adams*, 10 Cush. 252 ; *Bidwell* v. *City of Pittsburgh*, 85 Penn. St. 412 ; *Lafayette* v. *Fowler*, 34 Ind. 140 ; *Shutte* v. *Thompson*, 15 Wall. 151, 159.

However, as we learn from this record that there are others than the appellees concerned in the question of the validity of the act of Congress, and as the decision of the Court of Appeals,

by declaring the act void as to the appellees, operates to defeat or suspend proceedings under it, and under other existing acts of Congress in similar terms, respecting public improvements in the District, we prefer to pass by the question whether the appellees are estopped by having made the dedication imposed as a condition precedent to the opening of the streets, and to place our decision upon the question discussed by the Court of Appeals and which controlled its decision, namely, that of the constitutionality of the act of Congress under which the proceedings were had.

The principal objections urged against the validity of the act are, first, because, as is alleged, it arbitrarily fixes the amount of benefits to be assessed upon the property, irrespective of the amount of benefits actually received or conferred upon the land assessed, by the opening of the streets; and, second, because it contains no provision for notifying the owners of the property to be assessed, in advance of such assessment, or at any time pending the consideration of the cause by the jury.

In *Bauman* v. *Ross*, 167 U. S. 548, on appeal from the Court of Appeals of the District of Columbia, it was held that Congress may direct that, when part of a parcel of land is appropriated to the public use for a highway in the District of Columbia, the tribunal vested by law with the duty of assessing the compensation or damages due to the owner, whether for the value of the part taken, or for any injury to the rest, shall take into consideration, by way of lessening the whole or either part of the sum due him, any special and direct benefits, capable of present estimate and reasonable computation, caused by the establishment of the highway to the part not taken; that the estimate of the just compensation for property taken for the public use, under the right of eminent domain, is not required to be made by a jury, but may be entrusted to commissioners appointed by a court, or to an inquest consisting of more or fewer men than an ordinary jury; that Congress, in the exercise of the right of taxation in the District of Columbia, may direct that half of the amount of the compensation or damages awarded to the owners of lands appropriated to the public use for a highway shall be assessed and charged upon

the District of Columbia, and the other half upon the lands benefited thereby within the District, in proportion to the benefit; and may commit the ascertainment of the lands to be assessed, and the apportionment of the benefits among them, to the same tribunal which assesses the compensation or damages; that if the legislature, in taxing lands benefited by a highway, or other public improvement, makes provision for notice, by publication or otherwise, to each owner of land, and for hearing him, at some stage of the proceedings, upon the question what proportion of the tax shall be assessed upon his land, his property is not taken without due process of law.

In the opinion of the court in that case, delivered by Mr. Justice Gray, it was said that the provisions of the statute under consideration, which regulated the assessment of damages, are to be referred, not to the right of eminent domain, but to the right of taxation, and that the legislature, in the exercise of the right of taxation, has the authority to direct the whole, or such part as it may prescribe, of the expense of a public improvement, such as the establishing, the widening, the grading or the repair of a street, to be assessed upon the owners of lands benefited thereby; and that such authority has been repeatedly exercised in the District of Columbia by Congress, with the sanction of this court—citing *Willard* v. *Presbury*, 14 Wall. 676; *Mattingly* v. *District of Columbia*, 97 U. S. 687; *Shoemaker* v. *United States*, 147 U. S. 282, 302. It was also said that the class of lands to be assessed for the purpose may be either determined by the legislature itself, by defining a territorial district, or by other designation; or it may be left by the legislature to the determination of commissioners, and be made to consist of such lands, and such only, as the commissioners shall decide to be benefited; that the rule of apportionment among the parcels of land benefited also rests within the discretion of the legislature, and may be directed to be in proportion to the position, the frontage, the area or the market value of the lands, or in proportion to the benefits as estimated by commissioners—citing the cases hereinbefore mentioned.

By the act of June 17, 1890, c. 428, 26 Stat. 159, Congress enacted that the Commissioners of the District of Columbia

shall have the power to lay water mains and water pipes and erect fire plugs and hydrants, whenever the same shall be, in their judgment, necessary for the public safety, comfort or health.   By the act of August 11, 1894, c. 253, 28 Stat. 275, it was provided " that hereafter. assessments levied for laying water mains in the District of Columbia shall be at the rate of one dollar and twenty-five cents per linear front foot against all lots or lands abutting upon the street, road or alley in which a water main shall be laid."

On October 5, 1895, Homer B. Parsons filed in the Supreme Court of the District of Columbia a petition against the District of Columbia and the Commissioners thereof, complaining, as illegal, of a certain charge or special assessment against land of the petitioner, as a water main tax or assessment for laying a water main in the street on which said land abuts.   After a hearing upon the petition and return, the petition was dismissed. An appeal was taken to the Court of Appeals of the District of Columbia, where the judgment of the Supreme Court of the District was affirmed.   The cause was then brought to this court, and by it the judgment of the Court of Appeals was affirmed.   *Parsons* v. *District of Columbia*, 170 U. S. 45.   The principal grounds of complaint were that the lot owner was given no opportunity to be heard upon the question of cost, or utility, or benefit of the work, or of the apportionment of the tax ; that the assessment was made without any estimate of the cost of the work to be done, and without regard to the cost of the work or the value of the improvement, and not upon the basis or benefits to the property assessed.

This court held that the legislation in question was that of the United States, and must be considered in the light of the conclusions, so often announced, that the United States possess complete jurisdiction, both of a political and municipal nature, over the District of Columbia—citing *Mattingly* v. *District of Columbia*, 97 U. S. 687; *Gibbons* v. *District of Columbia*, 116 U. S. 404; *Shoemaker* v. *United States,* 147 U. S. 282; *Bauman* v. *Ross*, 167 U. S. 548; that when, by the act of August 11, 1894, Congress enacted that thereafter assessments levied for laying water mains in the District of Columbia should be at the

rate of one dollar and twenty-five cents per linear front foot against all lots or land abutting upon the street, road or alley in which a water main shall be laid, such act must be deemed conclusive alike of the question of the necessity of the work, and of the benefits as against abutting property; that to open such questions for review by the courts, on the petition of any and every property holder, would create endless confusion; that where the legislature has submitted these questions for inquiry to a commission, or to official persons to be appointed under municipal ordinances or regulations, the inquiry becomes in its nature judicial in such a sense that the property owner is entitled to a hearing, or to notice or an opportunity to be heard; that the function of the Commissioners, under the act, was not to make assessments upon abutting properties, nor to give notice to the property owners of such assessments, but to determine the question of the propriety and necessity of laying water mains and pipes, and of erecting fire plugs and hydrants, and that their *bona fide* exercise of such a power cannot be reviewed by the courts.

If, then, the reasoning and conclusions of these cases are to be respected as establishing the law of the present case, it is plain that it was within the power of Congress, by the act of March 3, 1899, to order the opening and extension of the streets in question, and to direct the Commissioners of the District to institute and conduct proceedings in the Supreme Court of the District to condemn the necessary land; and it was also competent for Congress, in said act, to provide that, of the amount found due and awarded as damages for and in respect of the land condemned for the opening of said streets, not less than one half thereof should be assessed by the jury in said proceedings against the pieces and parcels of ground situate and lying on each side of the extension of said streets, and also on all or any adjacent pieces or parcels of land which will be benefited by the opening of said streets as provided for in the said act, and that the sums to be assessed against each lot or piece or parcel of ground should be determined and designated by the jury, and that, in determining what amount should be assessed against any particular piece or parcel of ground, the jury should

take into consideration the situation of said lots and the benefits that they might severally receive from the opening of said streets.

It is also established by those authorities that, in proceedings of this nature, notice by publication is sufficient; and it accordingly follows that the order of publication, in the newspapers named, by the Supreme Court of the District gave due notice of the filing of the petition and an opportunity to all persons interested to show cause, if any they had, why the prayer of the petition should not be granted. Such notice also must be held to have operated as a notice to all concerned of the pending appointment of a jury, and that proceedings under the act of Congress would subsequently be had. This gave an opportunity for interested parties to attend the meetings of the jury, to adduce evidence, and be heard by counsel. The return of the marshal shows that some, at least, of the property owners appeared before the jury, produced witnesses, and were heard by counsel. If the appellees did not avail themselves of these opportunities, the court and jury, proceeding according to law, were not to blame.

The record shows that, on September 19, 1899, the court passed an order *nisi* confirming the verdict, award and assessment of benefits, unless cause to the contrary should be shown on or before the 4th day of the following month, and directing service of a copy of the order *nisi* on the owners of the land condemned and on the owners of the land assessed in said verdict. It also appears that the appellees were served with this copy, and that they accordingly filed exceptions to the finding of the jury and to the confirmation of the award, on October 4, 1899.

On the 18th of November, 1899, after hearing, the Supreme Court of the District passed a decree overruling the exceptions, and confirming the verdict of award and assessments made by the jury.

Upon the authorities heretofore cited it would therefore appear that the act of Congress of March 3, 1899, was a valid enactment, and that the proceedings thereunder were regular and constituted due process of law, unless reasons for a different

conclusion can be found in the opinion of the Court of Appeals, which reversed the decree of the Supreme Court of the District, and ordered the dismissal of the petition.

What, then, was the reasoning upon which the Court of Appeals proceeded? It was thus stated in the opinion:

"The principal questions raised by the assignments of error are two, 1, that of the constitutionality of the act of Congress under which the proceedings have been had; and, 2, that of the sufficiency of the notice given to the appellants in respect of the assessments upon their property.

"1. With respect to the first of these questions, we think that it has been conclusively determined for us by the decision of the Supreme Court of the United States, in the case of *Norwood* v. *Baker*, 172 U. S. 269.

"As we understand that decision, which undoubtedly has the effect of greatly qualifying the previous expressions of the same high tribunal upon the matter of special assessments, the limit of assessment on the private owner of property is the value of the special benefit which has accrued to him from the public improvement adjacent to his property."

But we think that the Court of Appeals has not correctly apprised the decision in *Norwood* v. *Baker*, and that, on examination, that decision and the reasoning on which it is founded will not be found to be applicable to the case now before us.

That case came to this court on an appeal from the Circuit Court of the United States for the Southern District of Ohio, wherein it had been held that for a municipality of a State to condemn land for a street through the property of a single owner, and then assess back upon his abutting property the entire damages awarded, together with the costs and expenses of the condemnation proceedings, is to take private property without due process of law, contrary to the Fourteenth Amendment to the Constitution of the United States. *Baker* v. *Norwood*, 74 Fed. Rep. 997. In the opinion of this court it was said:

"The plaintiff's suit proceeded upon the ground, distinctly stated, that the assessment in question was in violation of the Fourteenth Amendment providing that no State shall deprive any person of property without due process of law, nor deny to

any person within its jurisdiction the equal protection of the laws, as well as of the bill of rights of the constitution of Ohio." *Norwood* v. *Baker,* 172 U. S. 269, 277.

. It will, therefore, be perceived that there the court below and this court were dealing with a question arising under the Fourteenth Amendment of the Constitution of the United States, which, in terms, operates only to control action of the States, and does not purport to extend to authority exercised by the Government of the United States.

In the present case is involved the constitutionality of an act of Congress regulating assessments on property in the District of Columbia, and in respect to which the jurisdiction of Congress, in matters municipal as well as political, is exclusive, and not controlled by the provisions of the Fourteenth Amendment. No doubt, in the exercise of such legislative powers, Congress is subject to the provisions of the Fifth Amendment to the Constitution of the United States, which provide, among other things, that no person shall be deprived of life, liberty or property without due process of law, nor shall private property be taken for public use without just compensation. But it by no means necessarily follows that a long and consistent construction put upon the Fifth Amendment, and maintaining the validity of the acts of Congress relating to public improvements within the District of Columbia, is to be deemed overruled by a decision concerning the operation of the Fourteenth Amendment as controlling state legislation.

However, we need not pursue this suggestion, because we think the Court of Appeals, in regarding the decision in *Norwood* v. *Baker* as overruling our previous decisions in respect to Congressional legislation in respect to public local improvements in the District of Columbia, misconceived the meaning and effect of that decision. There the question was as to the validity of a village ordinance, which imposed the entire cost and expenses of opening a street, irrespective of the question whether the property was benefited by the opening of the street. The legislature of the State had not defined or designated the abutting property as benefited by the improvement, nor had the village authorities made any inquiry into the question of benefits.

There having been no legislative determination as to what lands were benefited, no inquiry instituted by the village councils, and no opportunity afforded to the abutting owner to be heard on that subject, this court held that the exaction from the owner of private property of the cost of a public improvement in substantial excess of the special benefits accruing to him is, *to the extent of such excess,* a taking, under the guise of taxation, of private property for public use without compensation, and accordingly affirmed the decree of the Circuit Court of the United States, which, while preventing the enforcement of the particular assessment in question, left the village free to make a new assessment upon the plaintiff's abutting property for so much of the expense of opening the street as would be found, upon due and proper inquiry, to be equal to the special benefits accruing to the property.

That it was not intended by this decision to overrule *Bauman* v. *Ross,* and *Parsons* v. *The District of Columbia* is seen in the opinion, where both those cases are cited, and declared not to be inconsistent with the conclusion reached. *Norwood* v. *Baker,* 172 U. S. 269, 294. Special facts, showing an abuse or disregard of the law, resulting in an actual deprivation of property, may give grounds for applying for relief to a court of equity; and this was thought by a majority of this court to have been the case in *Norwood* v. *Baker.* But no such facts are disclosed in this record.

The second proposition upon which the Circuit Court proceeded was that sufficient notice had not been given in respect of the assessments upon the property. This question, we think, has been disposed of by previous decisions, and has been sufficiently discussed in a previous part of this opinion.

> *The decree of the Court of Appeals of the District of Columbia is reversed and the cause remanded to that court with directions to affirm the decree of the Supreme Court of the District of Columbia.*

MR. JUSTICE HARLAN, (with whom concurred MR. JUSTICE WHITE and MR. JUSTICE MCKENNA,) dissenting.

I am of opinion that the judgment of the Court of Appeals of the District of Columbia should be affirmed.

Under the act of March 3, 1899, it was competent for the buy, *without regard to special benefits*, to put upon the lands abutting upon each side of the streets authorized to be opened and extended *not less* than one half of the entire damages found due and awarded in respect of the property taken under the first section of that act. It could only consider the question of benefits in respect to "adjacent" pieces or parcels of land. For the reasons stated in my dissenting opinion in *French* v. *Barber Asphalt Paving Company*, I cannot agree that such a statutory regulation or rule is consistent with the Constitution of the United States. My views upon the general subjects of special assessments are expressed in that opinion and need not be repeated here.

The court in the present case says that Congress has exclusive jurisdiction, municipal and political, in the District of Columbia, and is not controlled by the Fourteenth Amendment, although it is controlled by the Fifth Amendment providing, among other things, that no person shall be deprived of life, liberty or property without due process of law, nor shall private property be taken for public use without just compensation. "But," the court proceeds, "it by no means necessarily follows that a long and consistent construction put upon the Fifth Amendment and maintaining the validity of acts of Congress relating to public improvements within the District of Columbia, is to be deemed overruled by a decision concerning the operation of the Fourteenth Amendment as controlling legislation." These observations were made to sustain the proposition that the principles announced in *Norwood* v. *Baker*, 172 U. S. 269, in reference to the validity of state enactments relating to local public improvements, have no necessary application to a case of a like kind arising under a similar act of Congress relating to local public improvements in the District of Columbia. As the court does not pursue this subject, nor express any final view upon the question referred to, I refer to this part of its opinion only for the purpose of recording my dissent from the intimation that what a State might

not do in respect of the deprivation of property withc t due process of law, Congress under the Constitution of the United States could, perhaps, do in respect of property in this District. The Fifth Amendment declares that no person shall be deprived of property " without due process of law." The Fourteenth Amendment declares that no State shall deprive any person of property " without due process of law." I s inconceivable to me that the question whether a person has been deprived of his property without due process of law can be determined upon principles applicable under the Fourteenth Amendment but not applicable under the Fifth Amendment, or upon principles applicable under the Fifth and not applicabio under the Fourteenth Amendment. It seems to me that the words " due process of law " mean the same in both Amendments. The intimation to the contrary in the opinion of the court is, I take leave to say, without any foundation upon which to rest, and is most mischievous in its tendency.

The court withdraws this case from the rule established in *Norwood* v. *Baker* upon the ground that the legislature of Ohio " had not defined or designated the abutting property as benefited by the improvement." But this is a mistake; for, as plainly stated in the opinion in that case, the State, by statute, had authorized villages to establish streets and highways and to meet the cost of such improvements by special assessments on the abutting property, according to *frontage, without regard to special benefits accruing to the property so assessed.* And, to repeat what I have said in *French* v. *Barber Asphalt Paving Company,* just decided, it was because and only because of this *rule,* prescribed *by the legislature,* that the state enactment was condemned as unconstitutional. The enactment, under which the council of Norwood proceeded, put upon the abutting property, when the municipality proceeded under the front-foot rule, the *entire* cost of opening a street; precluding, by a *rule* established for such cases, the owner of the property from showing that the cost was in excess of special benefits and was confiscatory to the extent of such excess. *Norwood* v. *Baker* expressly rejected the theory that the entire cost of a public highway, in which the whole community was interested, could be put, under

legislative sanction, on the abutting property, where such cost was in substantial excess of the special benefits accruing to the property assessed.

The court, in this case, says that "special facts showing an abuse or disregard of the law, resulting in an actual deprivation of property, may give grounds for applying for relief to a court of equity." What this means, when taken in connection with what has been said and intimated by the court in *French* v. *Barber Asphalt Paving Co.*—especially when considered in the light of the broad declarations in other cited cases as to legislative power—I confess I am unable to say. What " special facts," in the case of special assessments to meet the cost of a public improvement, would show an abuse of the law ? What is meant by the words " an actual deprivation of property ? " If private property abutting on a street be assessed for the cost of improving the street in excess of special benefits accruing to such property, is the assessment to the *extent of the excess* such an abuse of the law or such an actual deprivation of property as would justify the interference of a court of equity ? In *Norwood* v. *Baker* this question was answered in the affirmative. Whether that doctrine is to remain the court does not distinctly say either in the present case or in any of the cases relating to special assessments just determined.

I submit that if the present case is to be distinguished from *Norwood* v. *Baker*, it should be done upon grounds that do not involve a misapprehension of the scope and effect of the decision in that case. If Congress can, by direct enactment, put a special assessment upon private property to meet the entire cost of a public improvement made for the benefit and convenience of the entire community, even if the amount so assessed be in substantial excess of special benefits, and therefore, to the extent of such excess, confiscate private property for public use without compensation, it should be declared in terms so clear and definite as to leave no room for doubt as to what is intended.