# BRISCOE *v.* MACFARLAND.

---

EMINENT DOMAIN; CONSTITUTIONAL LAW; ASSESSMENT OF LAND FOR BENE-
FITS; STATUTES; EQUITY; JUDGMENT AND DECREES; APPEAL AND ER-
ROR.

1. The act of Congress of February 10, 1899 (30 Stat. at L. 834, chap. 150), for the extension of Rhode Island avenue in the city of Washington, and providing that one half of the amount awarded for damages for the land condemned shall be assessed against certain lands to be benefited thereby, lying within a designated district, and the giving of notice to the owners thereof by publication, is constitutional. (Following *Buchanan* v. *Macfarland,* 31 App. D. C. 6.)

2. In a strict legal sense, "void" means without force or effect,—something that does not bind or conclude anybody, or serve to convey or devest a right; while "voidable" means that which has some force or effect, but which may be set aside or annulled for some error or inherent vice or defect. The word "void" is frequently used in statutes, contracts, and other instruments without regard to its strict legal signification, and is not infrequently used in judicial opinions without a special regard to its strict sense and the distinction between it and "voidable," where the subject-matter does not necessarily demand exactness of definition or limitation.

3. Where, in a proceeding to condemn land for the extension of Rhode Island avenue in the city of Washington, under the act of Congress of February 10, 1899 (30 Stat. at L. 834, chap. 150), the lower court overruled objections of a property owner to an award of a jury of seven, empaneled to assess damages and benefits, and confirmed the award, and the property owner appealed from the order of confirmation, but abandoned his appeal, it was *held* in a suit in equity subsequently brought by him to enjoin a sale of his land under a special assessment based upon such award, and to vacate the assessment, that, while the lower court acted contrary to law in not ordering a reassessment by a new jury of twelve, as required by law, its order of confirmation was not void, but voidable only, and the appeal therefrom having been abandoned, it was conclusive and binding upon the property owner. (Explaining and distinguishing *Brown* v. *Macfarland,* 19 App. D. C. 525; *Macfarland* v. *Saunders,* 25 App. D. C. 438; and *Buchanan* v. *Macfarland,* 31 App. D. C. 19.)

4. *Quære,* whether a bill in equity by a property owner is maintainable to remove a cloud on title created by an advertisement of property for sale under a lien founded on a void judgment.

No. 1886.  Submitted October 14, 1908.  Decided November 16, 1908.

HEARING on an appeal by the complainant from a decree of the Supreme Court of the District of Columbia, dismissing a bill in equity to enjoin the commissioners of the District of Columbia from selling complainant's land under a special assessment for benefits, and to vacate the assessment.

*Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a decree dismissing the bill of appellant, Arthur Briscoe, to enjoin the sale of a lot of land in the

city of Washington under a special assessment for benefits in improving a street, and to vacate said assessment.

The cause was submitted upon bill, answer, and an agreed statement of facts.

The necessary facts are as follows: Plaintiff was, on and before March 8, 1899, the owner of lot 15 in block 7, of the subdivision known as Bloomingdale. On that day Henry B. F. Macfarland, Henry L. West, and Jay J. Morrow, commissioners of the District, began a proceeding in the district court for the condemnation of the land necessary to the extension of Rhode Island avenue, under authority of an act of Congress approved February 10, 1899. The act provided that one half of the amount awarded as damages for the land condemned shall be assessed against certain lands to be benefited thereby, lying on each side of said avenue, between certain-named streets, and other designated squares and lots, including plaintiff's lot. These assessments, when confirmed by the court, were declared a lien on the lands severally assessed, to be paid in five equal instalments, and collected as special improvements are collected, under other laws,—that is to say, by sale by the collector of taxes. A jury of seven was empaneled to assess the damages and benefits. The verdict returned assessed $1,000 against plaintiff's lot. Plaintiff was not personally cited to appear. The notice given was by publication to all property owners, as provided by law. A rule was issued to all parties whose lands had been assessed, to show cause why the verdict should not be confirmed. Plaintiff appeared and filed objections to the award as unconstitutional, unjust, etc. The court overruled the objections and confirmed the verdict. Plaintiff appealed therefrom to the court of appeals, but subsequently dismissed the same. The collector advertised the lot for sale for the entire amount of the assessment, interest, and costs of advertising. In the meantime, Congress corrected the ambiguity in the law as to collection in five equal instalments, requiring the same to be collected in five equal annual instalments. An order restraining the sale was issued on the filing of the bill, April 14, 1902. The defendant answered the bill, and no further proceedings were had

until July 6, 1907, when, after hearing upon bill, answer, and agreed statement of facts, the restraining order was discharged, and the bill dismissed.

*Mr. Samuel Maddox* and *Mr. H. Prescott Gatley* for the appellant.

*Mr. Edward H. Thomas,* Corporation Counsel, for the appellees.

Mr. Chief Justice Shepard delivered the opinion of the Court:

1. The objection to the constitutionality of the act of Congress under which the condemnation of lands and the assessment of benefits were effected in this case is untenable. Congress had the power to order the extension of the avenue, the condemnation of the lands necessary therefor, the designation of the taxing district for the assessment of benefits, and the giving of notice to the owners of land therein by publication. *Wight* v. *Davidson,* 181 U. S. 371, 378, 381, 382, 45 L. ed. 900, 904, 905, 21 Sup. Ct. Rep. 616; *Bauman* v. *Ross,* 167 U. S. 548, 42 L. ed. 270, 17 Sup. Ct. Rep. 966; *Buchanan* v. *Macfarland,* 31 App. D. C. 6, 18. There is nothing in the record to indicate that the amount assessed against plaintiff's lot was actually in excess of the benefits accruing from the extension of the avenue, so as to bring the same within the principle governing the later case of *Martin* v. *District of Columbia,* 205 U. S. 135, 140, 51 L. ed. 743, 744, 27 Sup. Ct. Rep. 440.

2. The serious question in this case has its origin in the order of the district court, in the condemnation proceeding, confirming the verdict returned therein, notwithstanding objections thereto had been filed by the plaintiff and others whose lands were affected.

As that proceeding was expressly governed by the procedure prescribed in several sections of the Revised Statutes of the District, the court should have vacated the verdict, and ordered

a jury of twelve to be summoned to make a new assessment. That was its duty under sec. 263. *Brown* v. *Macfarland,* 19 App. D. C. 525.

The contention, founded on the failure to perform this duty is that the court had no power to do aught else than to vacate the verdict, discharge the jury, and summon a new jury, and that, therefore, its order of confirmation is void. In support of this contention, two cases are cited wherein expressions are used indicating that such is the result. *Brown* v. *Macfarland,* 19 App. D. C. 525, 531; *Macfarland* v. *Saunders,* 25 App. D. C. 438, 442. In discussion of a like contention in the recent case of *Buchanan* v. *Macfarland* (31 App. D. C. 6, 19) it was said: "The expressions to the effect that the order of confirmation in opposition to the objections against the verdict was null and void must be considered with reference to the questions actually presented for decision. In the first of those cases the objectors appealed from the order confirming the verdict notwithstanding their objections. In the second case the order confirming the verdict had been set aside, on petition of the objectors, in so far as it applied to the assessment of benefits, but confirmed as regards the assessment of damages for land taken or damaged. The commissioners of the District appealed from this order, which was affirmed. The case at bar stands on entirely different grounds. It is neither an appeal from an order overruling exceptions and confirming the verdict, nor a direct proceeding to set aside the order of confirmation and open the case to determination by another jury. We think the order of confirmation was not absolutely void as against their attack. The appellants were not among the objectors, and it may be presumed that the objectors withdrew or waived their objections and accepted the result as they had the right to do. See *Macfarland* v. *Byrnes,* 19 App. D. C. 531, 538, decided on the same day with *Brown* v. *Macfarland,* supra."

It is to be remembered, however, that in the case at bar the party had offered objections to the verdict, which were not withdrawn or waived, and there can be no presumption, therefore, in favor of the regularity of the order of confirmation, as in

the case quoted from. This difference between the two cases presents a good reason for the reconsideration of the question. It is conceded that sec. 263 made it the duty of the court, when the objections were offered to the verdict, to empanel a new jury of twelve for the purpose of reassessing the damages and benefits. It defines the duty of the court, but does not, in terms, at least, declare that the court shall have no other or further jurisdiction in the premises; nor does it declare that such an order of confirmation shall be void, though, as we have seen in the cases referred to above, such an order of confirmation has been referred to as void. In its strict legal sense, "void" means without force or effect,—something that does not bind or conclude anybody, or serve to convey or devest a right. "Voidable" means that which has some force or effect, but which may be set aside or annulled for some error or inherent vice or defect. The word "void" is frequently used in statutes, contracts, and other instruments without regard to its strict legal signification. *Ewell* v. *Daggs,* 108 U. S. 143, 148, 27 L. ed. 682, 684, 2 Sup. Ct. Rep. 408. That case depended upon the construction of a statute. Mr. Justice Matthews, speaking for the court, said: "It is quite true that the usury statute referred to declares the contract of loan, so far as the whole interest is concerned, to be 'void and of no effect.' But these words are often used in statutes and legal documents, such as deeds, leases, bonds, mortgages, and others, in the sense of voidable merely; that is, capable of being avoided, and not as meaning that the act or transaction is absolutely a nullity, as if it had never existed, incapable of giving rise to any rights or obligations under any circumstances. Thus, we speak of conveyances void as to creditors, meaning that creditors may avoid them, but not others. Leases which contain a forfeiture of lessee's estate for nonpayment of rent, or breach of other condition, declare that, on the happening of the contingency, the demise shall thereupon become null and void; meaning that the forfeiture may be enforced by re-entry at the option of the lessor. It is sometimes said that a deed obtained by fraud is void, meaning that the party defrauded may, at his election, treat it

:as void." See.also *Tolbert* v. *Horton,* 31 Minn. 518, 520, 18 N. W. 647.

It may be added that the word is not infrequently used in judicial opinions without special regard to its strict sense and the distinction between it and "voidable," where the subject-matter did not necessarily demand exactness of definition or limitation. *Somes* v. *Brewer,* 2 Pick. 184, 191, 13 Am. Dec. 406. It is a familiar principle that the judgment of a court having no jurisdiction of the subject-matter is void in the strict sense of the word. It binds or concludes no one. No rights can be acquired under or devested by it. It is in fact no judgment at all. But, when a court has such jurisdiction, and proceeds to render a judgment contrary to law or to its duty in the premises, that judgment is erroneous only; that is to say, voidable, but not void. As said by Mr. Justice Miller in *Ex parte Lange* (18 Wall. 163, 175, 21 L. ed. 872, 878) : "A judgment may be erroneous and not void, and it may be erroneous because it is void. The distinctions between void and merely voidable judgments are very nice, and they may fall under the one class or the other as they are regarded for different purposes." In a recent case it was said by Mr. Justice Holmes: "No doubt it sometimes may be difficult to decide whether certain words in a statute are directed to jurisdiction or to merits, but the distinction between the two is plain. One goes to the power, the other only to the duty, of the court. Under the common law it is the duty of a court of general jurisdiction not to enter a judgment upon a parol promise made without consideration; but it has power to do it, and, if it does, the judgment is unimpeachable, unless reversed. Yet a statute could be framed that would make the power, that is, the jurisdiction of the court, dependent upon whether there was a consideration or not. Whether a given statute is intended simply to establish a rule of substantive law, and thus to define the duty of the court, or is meant to limit its power, is a question of construction and common sense. When it affects a court of general jurisdiction, and deals with a matter upon which that court must pass, we naturally are slow to read ambiguous words as

meaning to leave the judgment open to dispute, or as intended
to do more than to fix the rule by which the court should de-
cide." *Fauntleroy* v. *Lum*, 210 U. S. 230, 234, 52 L. ed. 1039,
1041, 28 Sup. Ct. Rep. 641.

. The act of February 10, 1899 (30 Stat. at L. 834, chap.
150), adopted only a part of chapter 11, D. C. Rev. Stat., which
provided for the condemnation of lands for new public roads
in the District. No provision was therein made for the assess-
ment of benefits. The District authorities were vested with
full power in such cases to determine upon the establishment
and location of such new roads. In case of the failure of land-
owners to give the necessary land or to agree upon the damages,
the commissioners were authorized to direct the marshal to
summon a jury of seven to assess the same. In case of objection
to the verdict returned, a new jury of twelve was to be sum-
moned, whose verdict was directed to be recorded as final and
conclusive. The intervention or supervision of no court was
provided for. The growth of the city of Washington since that
time has rendered it important to extend the streets of the city
throughout the adjacent country, in order to meet the new con-
ditions, and preserve conformity with the general plan; and
Congress has met the demand, from time to time, by providing
for the necessary extension of streets and avenues, and the as-
sessment of benefits in part payment for damages incurred.
The act of February 10, 1899 (30 Stat. at L. 834, chap. 150),
ordered the extension of Rhode Island avenue, and provided
that one half of the damages incurred in the necessary condem-
nation of the land therefor, should be assessed against other
property within certain limits, as benefits. Instead of calling
a jury themselves, under the old statute relating to roads, the
commissioners were required to "commence suit" for the con-
demnation of the land. No court was designated, as in some
other acts; but, as the supreme court of the District was the
only court in which a suit could be commenced, it was neces-
sarily meant, and the proceedings were begun therein. The
jury of seven was ordered by that court, and proceeded to per-
form their duties under its supervision. It is true that, under

the procedure adopted from the Revised Statutes, the court should have ordered a new jury when objection was made to the verdict of the first. And although sec. 264 of the old statute declared that the second verdict should be final and conclusive, the effect was qualified by sec. 5 of the act of 1899, which requires confirmation by the court before it could take effect. The power to confirm necessarily included the power to set aside and order the assessment to be made again. Nor would the order of confirmation of a second verdict be final and conclusive, because, under the general law creating the court of appeals, an appeal lies thereto from any final order of the supreme court of the District or any justice thereof, unless such right of appeal be negatived by the terms of the particular act. No such effect can be attributed to the act under consideration. Having to construe all of the statutes referred to, we are of the opinion that the jurisdiction of the supreme court of the District over the subject-matter of the suit did not cease with the return of the verdict and the presentation of the objections thereto. While it acted contrary to law in not ordering the reassessment by a new jury, its order of confirmation is not void, but erroneous and voidable merely. Appellant was in court and gave notice of appeal from the order, and took his appeal. Had he prosecuted the same, the result would have been the reversal of the order for the error committed. Instead of prosecuting, he voluntarily dismissed his appeal. The order of confirmation must therefore be regarded as in force, and having the effect to terminate the suit or proceeding, and to conclude the right of the appellant in this new proceeding in equity.

3. The foregoing conclusion renders it unnecessary to consider whether it would be proper for a court of equity to entertain jurisdiction of a bill to remove a cloud from a title, created by the advertisement of property for sale under a lien founded on a void judgment.

The decree dismissing the bill will be affirmed, with costs.

*Affirmed.*

On application of the appellant, an appeal to the Supreme Court of the United States was allowed December 22, 1908.