**WILKINSON v. DOUGHERTY et al., Commissioners of District of Columbia.**

Court of Appeals of District of Columbia.

Submitted February 7, 1928. Decided March 5, 1928.

No. 4612.

1. **District of Columbia** ⊜⇒12—Law authorizing commissioners of District of Columbia to prepare new highway plans did not limit them to plans prepared under previous laws (Act March 4, 1913 [37 Stat. 949]; Act March 2, 1893 [27 Stat. 532]; Act June 28, 1898 [30 Stat. 519]).

Under Act of March 4, 1913 (37 Stat. 949), authorizing commissioners of District of Columbia to prepare new highway plans for District, the commissioners were not limited in opening, widening, or extending highways to previous plans prepared under provisions of Act March 2,

1893 (27 Stat. 532), and Act June 28, 1898 (30 Stat. 519), but were authorized to prepare a new plan under provisions of such earlier acts, which should take the place of previous plans.

2. **Constitutional law** ⊜⇒290(3)—Failure to give property owner, against whom benefits were assessed, notice of hearing, held taking of property without due process (Code, § 491n, par. 2; Act March 4, 1913, § 1 [37 Stat. 950]).

Under Act March 4, 1913, § 1 (37 Stat. 950), providing that condemnation proceedings for extension or widening of street, avenue, or road were to be under provision of Code, §§ 491a-491n, delegating to jury authority to determine benefit to property by virtue of par. 2 of section 491n, failure to serve property owner, against whom benefits were assessed, with notice of hearing on question of benefits pursuant to section 491h, *held* to amount to a taking of property without due process of law.

Appeal from the Supreme Court of the District of Columbia.

Suit by Oscar Wilkinson against Proctor L. Dougherty and others, Commissioners of the District of Columbia. Decree for defendants, and complainant appeals. Reversed and remanded.

W. M. Lewin, of Washington, D. C., for appellant.

F. H. Stephens and R. L. Williams, both of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, ROBB, Associate Justice, and BLAND, Judge of United States Court of Customs Appeals.

ROBB, Associate Justice. Appeal from a decree in the Supreme Court of the District dismissing appellant's bill to have declared null and void an assessment of $3,300 for alleged benefits to premises 4700 Sixteenth Street Northwest, by reason of the extension of Crittenden street between Sixteenth and Seventeenth streets.

On August 31, 1895, section 1 of the original highway plan prepared in pursuance of the Act of March 2, 1893 (27 Stat. 532), was recorded in the office of the surveyor of the District of Columbia. This section included the plan for the extension of Sixteenth street to Seventeenth street, subsequently called Crittenden street. On February 11, 1899, an amended plan of this section, prepared under the authority of the Act of June 28, 1898 (30 Stat. 519), was duly recorded in the surveyor's office. Under this amended plan no change was made in the original location of Crittenden street between Sixteenth and Seventeenth streets.

The Act of March 4, 1913 (37 Stat. 949), authorized the commissioners of the District, "whenever in their judgment the public in-

terests require it, to prepare a new highway plan for any portion of the District of Columbia, and submit the same for approval, after public hearing, to the highway commission, created by Act of Congress approved March second, eighteen hundred and ninety-three"; such new plan to be prepared under the provisions of the Act of June 28, 1898, and, when approved and recorded, to "take the place of and stand for any previous plan for the portion of the District of Columbia affected." The act of 1913 further authorized the commissioners "to open, extend or widen any street, avenue, road, or highway to conform with the plan of the permanent system of highways in that portion of the District of Columbia outside of the cities of Washington and Georgetown, adopted under the Act of Congress approved March second, eighteen hundred and ninety-three, as amended by the Act of Congress approved June twenty-eighth, eighteen hundred and ninety-eight, by condemnation under the provisions of subchapter one of chapter fifteen of the Code of Law for the District of Columbia: Provided, that the entire amount found to be due and awarded by the jury under such proceedings as damages for and in respect of the land condemned, plus the cost and expenses of said proceedings, shall be assessed by the jury as benefits."

On March 3, 1922, the commissioners of the District submitted to the highway commission a plat by which they recommended a change in the location of Crittenden street between Sixteenth and Seventeenth streets by moving the street approximately 42 feet north of its former location. This change was approved by the highway commission, and the plat embodying it was duly recorded in the surveyor's office September 13, 1922.

Appellant was and is the owner of lot No. 18 in Square No. 2653, with a frontage on Sixteenth street of 85 feet, and a depth of approximately 214 feet to a 30-foot alley. Under the amended plat there was left between the south line of appellant's lot and Crittenden street a strip of land between six and seven feet in width.

On November 27, 1922, the commissioners of the District filed a petition in the Supreme Court of the District for the condemnation of the necessary land for the extension of Crittenden street. Thereupon the court issued a notice and order of publication, warning "all persons having any interest" in the proceedings to appear on or before the 28th day of December, 1922, directing that a copy of the notice be published twice a week for two successive weeks in named newspapers, and that a copy of the notice be served "upon each of the owners of the fee of the land to be condemned herein as may be found * * * within the District of Columbia." Publication was made in accordance with the provisions of this order, and personal service made upon the owners of the land to be condemned. Pursuant to the order of the court, a jury was impaneled, and on June 29, 1923, returned its verdict, in which the value of the land taken was found to be $24,142.45 and the expenses of the proceeding $486.05, making a total of $24,628.50. This amount was assessed as benefits against twenty-seven lots or parts of lots, the assessments ranging from $20 to $4,278.49; the assessment against appellant's lot, as already noted, being $3,300. On July 30, 1923, the verdict of the jury was accepted and ratified by the court. Appellant had no actual knowledge of the proceedings nor of the assessment until October, 1923.

In appellant's bill, filed June 27, 1924, he contends, first, that under the act of 1913 the commissioners, in opening, widening, or extending highways were restricted to the plans prepared under the provisions of the acts of 1893 and 1898; and, second, that the assessment against his lot is void for lack of notice.

In disposing of the case below, the learned trial Justice said: "While this case seems one of great hardship to the plaintiff, it would seem that all the provisions of the law had been complied with in the condemnation proceedings. It results therefore that the bill should be dismissed, with costs."

[1] We are unable to accept appellant's interpretation of the provisions of the act of 1913 under consideration. 37 Stat. 949. That act authorizes the commissioners, "whenever in their judgment the public interests require it, to prepare a new highway plan for any portion of the District of Columbia," and submit the same for approval, after public hearing, to the highway commission created under the act of 1893; that such highway plans shall be prepared under the provisions of the act of 1893, as amended by the act of 1898, "and that upon approval and recording of any such new highway plan it shall take the place of and stand for any previous plan for the portion of the District of Columbia affected." The commissioners proceeded in strict accordance with the provisions of this act. In our view, the statute means exactly what it says; namely, that

the new plan takes the place of previous plans. An examination of the acts of 1893 and 1898 strengthens this view.

The act of 1893 was in nineteen sections, and provided an elaborate method of condemnation of all lands in the affected area not owned by the United States, or the District of Columbia, or which were not dedicated for public use as highways. The scheme provided for in this act was found to be too ambitious and impractical, and the act of 1898 repealed all but five of its sections. The first section of the act of 1893 directed the preparation of a plan for a permanent system of highways for the District of Columbia outside of Washington and Georgetown, and provided that the same should conform to the street plan of Washington as nearly as the commissioners might deem advisable and practicable. Section 2 directed the commissioners, when this plan had been adopted, to prepare a map showing all the boundaries and areas of highway therein, which was to be delivered to the commission created by the act. This commission was empowered to make such alterations in the plan as they might deem advisable, "keeping in view the intention and provisions of this act, and the necessity of harmonizing as far as possible the public convenience with economy of expenditure." The plan as finally approved by the commission was to be recorded in the office of the surveyor. Sections 3, 4, and 5 are not material here.

The act of 1898 authorized the commissioners forthwith to withdraw the map which had been made for a portion of the area covered by the provisions of the act of 1893, and the abandonment of all condemnation proceedings brought in conformity with the map. The act further authorized the commissioners to prepare an amended plan for that portion mentioned in section 1 of the act outside of existing subdivisions, which plan when recorded was to take the place of any previous plan. Section 6 provided for a public hearing before the submission of any map or plan to the commission for approval.

When, therefore, Congress, in the act of 1913, required new plans to be prepared under the provisions of the act of 1898, it is apparent that it had in mind the provisions to which we have specifically referred, and which, as we have already said, were observed by the commissioners in this case.

[2] The second contention of appellant presents a more difficult question. Under the act of 1913 (37 Stat. 950) condemnation

24 F.(2d)—64

proceedings for the extension or widening of any street, avenue, or road are to be "under the provisions of subchapter one of chapter fifteen of the Code of Law for the District of Columbia." Paragraph 2 of section 491n, in that subchapter, provides that "hereafter in all proceedings for the opening, extension, widening, or straightening of alleys and minor streets and for the establishment of building lines in the District of Columbia the jury of condemnation shall not be restricted as to the assessment area, but shall assess the entire amount awarded as damages plus the costs and expenses of the proceedings as benefits upon any and all lots, parts of lots, pieces or parcels of land which they may find will be benefited by the opening, extension, widening, or straightening of the alley or minor street, or by the establishment of the building line as they may find said lots, parts of lots, pieces or parcels of land will be benefited." It thus appears that Congress has delegated to the jury authority to determine not only whether and to what extent any particular piece of property is benefited, but the area within which benefits are to be assessed. This is not a case, therefore, where Congress has determined for itself the amount of the assessment and the property to be assessed, as in Spencer v. Merchant, 125 U. S. 345, 8 S. Ct. 921, 31 L. Ed. 763. That case involved a judgment of the Court of Appeals of the State of New York (100 N. Y. 585, 3 N. E. 682) upholding the validity of an assessment upon lands to cover the expense of a local improvement. Mr. Justice Gray, in his opinion, said: "In the absence of any more specific constitutional restriction than the general prohibition against taking property without due process of law, the Legislature of the state, having the power to fix the sum necessary to be levied for the expense of a public improvement, and to order it to be assessed, either, like other taxes, upon property generally, or only upon the lands benefited by the improvement, is authorized to determine both the amount of the whole tax, and the class of lands which will receive the benefit, and should therefore bear the burden, although it may, if it sees fit, commit the ascertainment of either or both of these facts to the judgment of commissioners. When the determination of the lands to be benefited is intrusted to commissioners, the owners may be entitled to notice and hearing upon the question whether their lands are benefited, and how much. But the Legislature has the power to determine, by the statute imposing the tax, what lands,

which might be benefited by the improvement, are in fact benefited; and, if it does so, its determination is conclusive upon the owners and the courts, and the owners have no right to be heard upon the question whether their lands are benefited or not, but only upon the validity of the assessment, and its apportionment among the different parcels of the class which the Legislature has conclusively determined to be benefited."

In Fallbrook Irrigation District v. Bradley, 164 U. S. 112, 17 S. Ct. 56, 41 L. Ed. 369, there was involved the validity of an irrigation act of the state of California which permitted the whole cost to be levied by a board of supervisors of the irrigation district upon all of the real estate of that district according to value, with no reference to the degree of benefit conferred. The court said: "Assuming for the purpose of this objection that the owner of these lands had, by the provisions of the act, and before the lands were finally included in the district, an opportunity to be heard before a proper tribunal upon the question of benefits, we are of opinion that the decision of such a tribunal, in the absence of actual fraud and bad faith, would be, so far as this court is concerned, conclusive upon that question." Another objection to the validity of the act was its failure to provide an opportunity to be heard on the question of the expediency of forming the irrigation district, and on the questions of costs and benefits received. On these questions the court said: "It has been held in this court that the Legislature has power to fix such a district for itself without any hearing as to benefits, for the purpose of assessing upon the lands within the district the cost of a local, public improvement. The Legislature, when it fixes the district itself, is supposed to have made proper inquiry, and to have finally and conclusively determined the fact of benefits to the land included in the district, and the citizen has no constitutional right to any other or further hearing upon that question. The right which he thereafter has is to a hearing upon the question of what is termed the apportionment of the tax, i. e., the amount of the tax which he is to pay. Paulsen v. Portland, 149 U. S. 30, 41 [13 S. Ct. 750, 37 L. Ed. 637]. But when, as in this case, the determination of the question of what lands shall be included in the district is only to be decided after a decision as to what lands described in the petition will be benefited, and the decision of that question is submitted to some tribunal (the board of supervisors in this case), the parties whose lands are thus included in the petition are entitled to a hearing upon the question of benefits, and to have the lands excluded if the judgment of the board be against their being benefited. Unless the Legislature decide the question of benefits itself, the landowner has the right to be heard upon that question before his property can be taken."

In Wight v. Davidson, 181 U. S. 371, 21 S. Ct. 616, 45 L. Ed. 900, it was contended that the Act of March 3, 1899, entitled "An act to extend S street, in the District of Columbia, and for other purposes" (30 Stat. 1344), was unconstitutional and void, because, among other reasons, it contained "no provision for notifying the owners of the property to be assessed, in advance of such assessment, or at any time pending the consideration of the cause by the jury." In that case, as here, there was a general notice by publication, and, after the assessment of benefits by the jury, the trial court entered an order confirming the award and assessment, unless before a day certain cause should be shown to the contrary. A publication of this order was directed, and also there was a direction that personal service should be made on all the owners of land condemned and all the owners of land assessed, and this was done. The court said that in Bauman v. Ross, 167 U. S. 548, 17 S. Ct. 966, 42 L. Ed. 270, it was held that "Congress, in the exercise of the right of taxation in the District of Columbia, may direct that half of the amount of the compensation or damages awarded to the owners of lands appropriated to the public use for a highway shall be assessed and charged upon the District of Columbia, and the other half upon the lands benefited thereby within the District, in proportion to the benefit; and may commit the ascertainment of the lands to be assessed, and the apportionment of the benefits among them, to the same tribunal which assesses the compensation or damages. If the Legislature, in taxing lands benefited by a highway, or other public improvement, *makes provision for notice, by publication or otherwise, to each owner of land, and for hearing him, at some stage of the proceedings, upon the question what proportion of the tax shall be assessed upon his land, his property is not taken without due process of law.*" (Italics ours.)

The court then reviewed the decision in Parsons v. District of Columbia, 170 U. S. 45, 18 S. Ct. 521, 42 L. Ed. 943, saying that it was there held that, when Congress enacted that "assessments levied for laying water mains in the District of Columbia should be

at the rate of one dollar and twenty-five cents per linear front foot against all lots or land abutting upon the street, road or alley in which a water main shall be laid, such act must be deemed conclusive alike of the question of the necessity of the work, and of the benefits as against abutting property. To open such questions for review by the courts, on the petition of any or every property holder, would create endless confusion. *Where the Legislature has submitted these questions for inquiry to a commission, or to official persons to be appointed under municipal ordinances on regulations, the inquiry becomes in its nature judicial in such a sense that the property owner is entitled to a hearing, or to notice or an opportunity to be heard. * * * "* (Italics ours.)

In District of Columbia v. Lynchburg Co., 236 U. S. 692, 35 S. Ct. 477, 59 L. Ed. 792, a street extension case in which was involved assessments for the betterment, the court said: "The respondents are concerned only as parties assessed for the betterment. As such they could not be mentioned by name in the notice since by the statute the jury decides what land is benefited as well as the sum with which it shall be charged. Section 491g. *It is necessary, of course, that due precautions should be taken to see that they get notice in fact."* (Italics ours.) This observation by the court is in harmony with its prior decisions to which we have referred.

In the present case Congress did not create a special improvement district and charge the cost of the improvement upon the property within that district. On the contrary, it submitted to the jury not only the inquiry as to what property would be benefited, but the question of the amount to be charged against each property owner. The inquiry then became in its nature judicial in such a sense that the property owner was entitled to a hearing, or to notice and an opportunity to be heard at some stage of the proceeding. If the parties to be assessed for benefits could not be mentioned by name in the published notice, because the jury were to decide what land was to be benefited, it would be a harsh rule to hold that the same parties should be bound by such a notice.

Moreover, there is no practical reason why, after the jury has returned its verdict and before its confirmation, the procedure followed in Wight v. Davidson should not be followed and actual notice be served upon those against whom assessments have been made, that they may show cause, if any they have, why the verdict should not be confirmed.

Section 491h, c. 15, Code of Law for the District of Columbia, provides that "the said court shall hear and determine any objections or exceptions that may be filed to any verdict of the jury and shall have power to vacate and set any verdict aside, in whole or in part, when satisfied that it is unjust or unreasonable, in which event the court shall order the jury commission to draw from the special box the names of as many persons as the court may direct, and from among the persons so drawn the court shall thereupon appoint a new jury of five capable and disinterested persons, who shall proceed to ascertain the damages or assess the benefits, or both, as the case may be, in respect of the land as to which the verdict may be vacated as in the case of the first jury: Provided, that if vacated in part, the residue of the verdict as to the land condemned or assessed shall not be affected thereby: And provided further, that the objections or exceptions to the verdict shall be filed within twenty days after the return of the verdict to the court." It is thus apparent that had actual notice been given appellant after the return of the verdict, he could have protected his interests through the filing of objections or exceptions.

We think that the failure to give appellant "notice in fact" in the circumstances disclosed in this case amounts to a taking of property without due process of law. Appellant earnestly contends that his property, against which there has been assessed $3,300, is damaged rather than benefited by the change in the street, and that he has had no opportunity to be heard on the question.

It follows that the assessment against appellant was void, and must be set aside. The decree is reversed, with costs, and the cause remanded for further proceedings.

Reversed.