## WHITE v. CITY OF TACOMA.

(Circuit Court, D. Washington, W. D. May 24, 1901.)

**1. CONSTITUTIONAL LAW—DUE PROCESS OF LAW—SPECIAL ASSESSMENTS.**

While state laws providing for the assessment of the cost of street improvements on abutting property are not necessarily unconstitutional because the assessments are made in accordance with the front-foot rule, where in practical operation they do confiscate property they are obnoxious to the fourteenth amendment to the constitution of the United States, and it is the duty of the courts to declare them void.

**2. SAME.**

Special assessments for street improvements do, in practical effect, take property for public use without compensation, and therefore deprive the owner of such property without due process of law, unless the property assessed is benefited by the improvement to an extent substantially equal to the amount of the assessment.

**3. MUNICIPAL CORPORATIONS—SPECIAL ASSESSMENTS—TEST OF VALIDITY.**

Each case arising under the laws for assessing abutting property to pay for street improvements must depend upon its particular facts. If it appears that an assessment has been levied by competent authority, and that it is fair and not in substantial excess of the benefits to accrue to the property by reason of the improvement, it will be sustained by the courts; but it is equally the duty of the courts to restrain the collection of assessments which are shown to be mere attempts to take the property of one, for the use of others, without compensation to the owner.

**4. SAME—JURISDICTION OF FEDERAL COURTS.**

No determination of the constitutional question involved in the making of a special assessment for street improvements by an administrative board or special tribunal created by the state can bar a suit in a national court to test the question whether by means of such determination the state has deprived the complainant of his property without due process of law.

Bill in equity to remove a cloud from the complainant's title to real estate alleged to have been created by an unlawful assessment for street improvements. Heard on demurrer to the complaint, and demurrer overruled.

John C. Stallcup and J. W. A. Nichols, for complainant.
Emmett N. Parker, Asst. City Atty., for defendant.

HANFORD, District Judge. The complainant, a citizen of the state of Pennsylvania, by his amended bill of complaint avers that he is the owner of certain city lots situated in the city of Tacoma, fronting upon G street, and extending to an alley 40 feet wide, designed for use as a means of ingress and egress to and from the rear end of said lots, which are near the middle of a block bounded on the northerly side by a street called "South Eighth Street." Said lots are improved, having three dwelling houses thereon; and before the

grading of South Eighth street said houses were easy to reach by carriages and wagons passing over South Eighth street and the 40-foot alley in the rear. The bill also avers that, by authority of the city of Tacoma, South Eighth street was graded between G street and Tacoma avenue, and cut down to a depth of more than 12 feet below the natural surface of complainant's lots, and by reason of said deep cut the alley became impassable for teams, leaving no convenient means of access to the back yard of the dwelling houses thereon, and the effect of closing the alley to travel has greatly diminished the rental value of said houses, so that the grading of South Eighth street has resulted in an injury to the complainant's lots, and is not beneficial, but, notwithstanding the injury to said property, the city government, pursuant to the statutes of this state and the charter of the city, has assumed to assess the cost of grading South Eighth street upon the property abutting thereon, and apportioned the cost upon the several lots according to the per front foot plan of making assessments for street improvements; and, although the complainant's lots do not abut upon said street, they are included within the assessment district, because they are situated between South Eighth street and a line drawn parallel therewith through the middle of the block. It is also averred in the bill that the complainant protested before the city council of Tacoma against making said cut, and especially against closing the alley, but his protest was overruled by the council, the grading was completed, and a special assessment on the basis above stated was made. and by subsequent proceedings the city has, in form, at least, established a lien upon said lots for the amount assessed against them, which the bill of complaint alleges is illegal and constitutes a cloud upon his title, and is a violation of his rights under that clause of the fourteenth amendment to the constitution of the United States which prohibits the state government from depriving any citizen of his property without due process of law.

In a series of decisions recently rendered, the supreme court of the United States has corrected a common misunderstanding of the decision of that court in the case of Village of Norwood v. Baker, 172 U. S. 269–303, 19 Sup. Ct. 187, 43 L. Ed. 443. French v. Paving Co.; 21 Sup. Ct. 625, 45 L. Ed. ——; City of Detroit v. Parker, 21 Sup. Ct. 624, 45 L. Ed. ——; Webster v. City of Fargo, 21 Sup. Ct. 623, 45 L. Ed. ——; Town of Tonawanda v. Lyon, 21 Sup. Ct. 609, 45 L. Ed. ——; Farrell v. Commissioners, 21 Sup. Ct. 609, 45 L. Ed. ——; Lombard v. Same, 21 Sup. Ct. 507, 45 L. Ed. ——; and Wight v. Davidson, 21 Sup. Ct. 616, 45 L. Ed. ——. In these several decisions the supreme court recognizes the fact that the per front foot plan may be a perfectly fair method of apportioning the burden of paying for street improvements, and that in cases in which it appears that assessments levied according to that plan are not in excess of the benefits to the property assessed, and are equal and fair, so that there is no ground for complaining of actual injustice, the assessments are not necessarily in violation of the constitution of the United States merely because made according to the per front foot plan; and it is shown that no such inflexible rule was announced or intended by the court in its

decision in the case of Village of Norwood v. Baker. That decision, however, does emphatically declare these important principles: That state laws providing for assessing the cost of street improvements upon abutting property, which in practical operation do confiscate property, are obnoxious to the fourteenth amendment to the constitution of the United States, and for that reason it is the duty of the courts to declare them to be void. That special assessments to pay for local improvements of public streets and highways do, in practical effect, deprive owners of their property without due process of law, unless the property subject to assessment is benefited by the improvement correspondingly to the amount of the assessment. That owners of property have the right to appeal to the courts for judicial protection against the unconstitutional invasion of their rights by municipal governments in enforcing state laws or local regulations for the collection of assessments which are in excess of the benefits to the property assessed, accruing or to accrue by reason of the improvements to be paid for by such assessments. These principles remain unaffected by the recent decisions of the supreme court, and they must guide this court in the determination of cases to which they are applicable. Therefore in the case now under consideration the complainant is entitled to relief if he can prove the truth of his averments that the city, for public convenience, has cut down one street so as to deprive him of the beneficial use of the 40-foot alley way designed to afford access to his property, and that the deprivation of the use of the alley depreciates the value of his property so that the property is of less value with the street improved than it would have been without the improvement. Those facts certainly make a good case, because the creation of a public benefit at the expense of an individual property holder, without any resulting benefit or compensation to him, is contrary to the letter and spirit of the national constitution. In the recent decision of the supreme court of this state in the case of McNamee v. City of Tacoma, 64 Pac. 791, it seems to have been considered that the per front foot plan of levying assessments is in legal contemplation, regardless of the physical conditions, a just and proper scheme for making the assessments conform to benefits. The opinion does not give reasons, but is dogmatic, as appears by the following quotation therefrom:

"This court has said that the statute meant assessment by benefits, and that practically makes the statute mean it, and the construction of the statute placed upon it by this court will be followed by the supreme court of the United States."

The determinations of courts and of specially authorized tribunals are, in general, conclusive and binding upon the parties to the proceedings in which they are made, but this general rule has its limitations. Courts are not competent to eliminate physical conditions, nor to change the necessary effect of actual conditions admitted to exist, by judgments or decrees declaring the effect to be other than what it really is. When a living man appears, and his identity is admitted, the protection to which the laws of the land entitle him cannot be denied because a court has decided that he had previously died. Scott v. McNeal, 154 U. S. 34–51, 14 Sup. Ct. 1108, 38 L. Ed.

896. Upon the same principle, decisions of courts and findings of special tribunals are impotent to convert actual deprivations of legal rights into benefits. When a street is graded or paved, the improvement is generally actually beneficial to the property abutting upon it, and the benefit is permanent, so that the owner cannot well say that the cost of the improvement, distributed according to the per front foot plan, exceeds the benefits. But physical conditions may make a difference, and if, in fact, the benefits to the different lots abutting on improved streets are not approximately equal, then assessments according to that plan are necessarily unequal and unjust. As a simple means of illustrating the idea here intended, we will suppose a case: I know of a street in one of the cities of this state which extends from the business center of the city a distance of three miles back into the country, traversing hills and valleys. It has been graded, and has a street-car service throughout its entire length, and the city government is being urged to have it paved. If the street in its entirety should be paved at one time, and all the abutting property included in one assessment district, and be assessed according to the per front foot plan, we will have this result: Some of the lots nearest to the business center of the city, which are now worth $20,000 a piece, will be greatly benefited, and enhanced in value at least 25 per cent., by the improvement. The assessment to be levied upon each lot will amount to about $1,000, or 20 per cent. of the direct and immediate benefit. Other lots, situated in the valleys, distant two miles or more from the business center, which are now worth $500 apiece, will also be benefited, and enhanced in value probably 100 per cent., and the assessment thereon will be the same in amount as upon the more valuable lots, and will equal their entire value, after adding the benefit resulting from the improvement, so that to enforce payment of the same will be equivalent to confiscation of the property for the benefit of the owners of the more valuable lots in the same assessment district. Another example may be given, illustrating in a different way the possible inequality and injustice of assessments by the per front foot plan: A street in a hilly town is laid along the face of a high hill, midway between the base of the hill and its summit. The street might be graded so that the lots on both sides would be benefited, but if, in order to make the street level throughout its entire length, the city officers should decide to make a deep cut along the face of the hill, we would have this result: The lots on the lower side of the street would be benefited by having the street cut down so as to bring them more nearly to the grade of the street, whereas the lots on the opposite side of the street would be left so high as to be unavailable for use without incurring extraordinary expenses and risks. What is here supposed is similar to the actual condition of some of the graded streets in cities of this state, and the lots thus made difficult of approach have been assessed equally with those on the opposite side of the street, which were greatly benefited. The injustice of a scheme of assessment which makes the owner of a lot which is made inaccessible by grading the street pay for the grading at the same rate as the owner of a lot on the opposite side, which is left approximately on grade, is

manifest; and an injustice of this nature is not modified in the least by a judicial fiat which, notwithstanding the benefit to one and the damage to the other, assumes to make the assessment upon both fair and in proportion to benefits, by virtue of its own infallibility.  I consider that each case arising under the laws for assessing abutting property to pay for street improvements must depend upon its particular facts.  If it appears that an assessment has been levied by competent authority, and that it is fair, and not in excess of the benefits to accrue by reason of the improvements to be paid for, it will be sustained by the courts.  It is equally the duty of the courts to restrain the collection of assessments which are shown to be mere attempts to take the property of one for the use of others without compensation to the owner.  For reasons already set forth in this opinion, I hold, also, that no determination of the constitutional question involved in this class of cases, by an administrative board or special tribunal created by the state, can stand as a bar to a suit in a national court to test the question whether by means of such determination the state has deprived the complainant of his property without due process of law.  Courts of equity are still "open to afford a remedy where there is an attempt, under the guise of legal proceedings, to deprive a person of his life, liberty, or property without due process of law."   French v. Paving Co., 21 Sup. Ct. 625, 45 L. Ed. ——.

Demurrer overruled.