### JOHNSON et al. v. RUDOLPH et al.

(Court of Appeals of District of Columbia. Submitted April 8, 1926. Decided December 6, 1926.)

No. 4388.

1. Courts ⬤⟿371(6)—Federal courts will determine validity of tax or special assessment only when violation of federal Constitution is charged.

It is only when a tax or special assessment is challenged as in violation of some provision of the federal Constitution that the federal courts will exercise jurisdiction to determine its validity.

2. District of Columbia ⬤⟿16—Under Constitution, federal courts will sustain special assessments on basis of frontage, if not in excess of benefits.

Under Constitution, federal courts will sustain special assessments of taxes on a frontage basis, provided such assessments are not in excess of benefits to property assessed and are equal and fair.

3. District of Columbia ⬤⟿16—Approximate accord between special assessment and benefits, as well as discrimination and inequality, may be inquired into.

In cases of special assessments arising under a general law, it is always competent to inquire, not only into the matter of discrimination and inequality, but as to the approximate accord between assessment and the benefits actually derived by the property owners from the improvement.

4. District of Columbia ⬤⟿16—Special repaving assessment on basis of frontage held invalid, as discriminatory and not in proportion to benefits.

Special assessment on basis of front footage and repaving particular street, whether treated as an original improvement or a repair, held invalid, as discriminatory and not in proportion to benefits, in view of existing physical conditions.

5. District of Columbia ⬤⟿16—Assessment on frontage basis, if not in excess of benefits, may be sustained, if there be relative equality in value of depth of abutting property.

To justify an assessment on the front foot plan, there must be a relative equality in the value and depth of the abutting property, and assessments must not exceed the benefits.

Appeal from the Supreme Court of the District of Columbia.

Suit by William G. Johnson and others, trustees, against C. H. Rudolph and others, Commissioners of the District of Columbia, and others. From a decree for defendants, plaintiffs appeal. Reversed and remanded.

C. H. Merillat and P. H. Marshall, both of Washington, D. C., for appellants.

F. H. Stephens and R. L. Williams, both of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice. This appeal is from a decree of the Supreme Court of the District of Columbia, dismissing plaintiff's bill in an action to quash an assessment of special taxes against certain land situated along Rhode Island avenue extended. The tax levied was for one-half the cost of taking up an existing macadam pavement on Rhode Island avenue and replacing it with an asphalt pavement. The assessments were made under the provisions of the Act of Congress of July 21, 1914, 38 Stat. 517, 524, as follows:

"Hereafter whenever under appropriations made by Congress, the roadway of any street, avenue, or road in the District of Columbia is improved by laying a new pavement thereon or completely resurfacing the same not less than one square in extent, from curb to curb, or from gutter to gutter where no curb exists, where the material used is sheet asphalt, asphalt block, asphaltic or bituminous macadam, concrete, or other fixed roadway pavement, such proportion of the total cost of the work, including all expenses of the assessment, to be made as hereinafter prescribed, shall be charged against and become a lien upon the abutting property, and assessments therefor shall be levied pro rata according to the linear frontage of said property on the street, avenue, or road, or portion thereof upon the roadway of which said new pavement or resurfacing is laid: Provided, that there shall be excepted from such assessment the cost of paving the roadway space included within the intersection of streets, avenues, and roads, as said intersections are included within the building lines projected, and also the cost of paving the space within such roadways for which street railway companies are responsible under their charters or under law on streets, avenues, or roads where such railways have been or shall be constructed."

And also the provisions of the Act of September 1, 1916, 39 Stat. 676, 716, known as the Borland Amendment, as follows:

"That hereafter the half cost of the paving or repaving of a roadway between the side thereof and the center thereof with sheet asphalt block, granite block, vitrified block, cement concrete bituminous concrete, macadam, or other form of pavement shall be assessed against the property abutting the side of the street so improved, such assessments to be levied and collected as now provided as to alleys and sidewalks: Provided, that the advertisement by publication of the commissioners' intention to do such work and the formal hearing in respect thereto required by law as to alley and sidewalk improvements shall not be required as to roadway improvements."

This method of taxation is properly known as the "front foot rule." The assessment against plaintiff's property amounted to $3.17 per front foot, or a total of $6,-112.25. The land in controversy, hereafter for convenience referred to as the "Small tract," is shown inclosed within heavy lines on the following plat:

It appears that, with the exception of block 4022 and the small triangular piece bounded by Rhode Island avenue, Brentwood road, and Fourteenth street, it lies south of Rhode Island avenue and contains 46.65 acres. The streets appearing on the plat on the land south of the avenue have not been opened, but are merely projected under the "District highway plan." This land is now used for farming purposes.

It appears from the record and a large map in evidence that the property fronting on the north side of Rhode Island avenue and

extending east and west of the Small tract, is largely improved city property. While there is less improvement on the south side of the avenue, a section of platted and improved city property lies immediately east of the Small tract, and still further east is a large section of improved city property. Rhode Island avenue is a main thoroughfare, extending in a northeasterly direction, from the center of the city to the District line, where it connects with a through highway to Baltimore. There is a double-track street car line extending along the center of the avenue from the heart of the city to the limits of the improved section. We are not, therefore, as in the case of Rudolph et al. v. Knox et al., 52 App. D. C. 33, 280 F. 1007, dealing with farm property fronting on a suburban country road. We have a city street, with street car line, sewerage, water and gas mains, and electric lines, all installed for the accommodation of the improved sections of the city lying adjacent thereto.

The chief contention of the appellants is that, because of the peculiar relation of plaintiff's property to Rhode Island avenue, as shown by the plat, and the relation of other property similarly situated to the avenue, the assessments made on the frontage basis are arbitrary, unequal, and discriminatory. The legality of this method of assessing taxes for local improvements, against property facing on streets which divide uniform city squares, is not questioned when applied to property of substantially uniform depth and of comparatively equal value, and when the assessments are not in excess of the benefits.

[1] We are not unmindful of the reluctance of the federal courts to interfere with the authority of the Legislatures of the states to create or authorize the creation of special taxing districts, and charge the cost, in whole or in part, against abutting property upon the frontage basis, without necessarily violating the Fourteenth Amendment to the federal Constitution. Tonawanda v. Lyon, 181 U. S. 389, 21 S. Ct. 609, 45 L. Ed. 908; Webster v. Fargo, 181 U. S. 394, 21 S. Ct. 623, 45 L. Ed. 912. The validity of such a tax, or special assessment, under the Constitution and laws of a state, is a matter of local law, and the determination of the state courts that, in the imposition of the tax, no provision of the Constitution of the state has been violated, will be accepted generally as controlling and not open to review by the federal courts. It is only when the tax or special assessment is challenged, as violating some provision of the federal Constitution,

that the federal courts will exercise jurisdiction to determine its validity. We are here considering a federal statute, applicable to federal territory, and the limitation upon the authority of the courts to interfere with similar legislation in the states is not involved in this case.

Some of the states still adhere to the principle that assessments on the frontage basis may be imposed without notice or hearing, or without regard to whether the benefits equal the assessment. Many of the states, however, following the decision of Norwood v. Baker, 172 U. S. 269, 19 S. Ct. 187, 43 L. Ed. 443, have held in effect that, while a special assessment against abutting property implies that the property assessed is actually benefited, the assessment can only be made when such benefit in fact exists, and when the amount of the assessment does not exceed the benefits. They also hold that the property owner is entitled to a hearing upon the question whether his property is so benefited. Atlanta v. Hamlein, 96 Ga. 381, 23 S. E. 408; White v. Gove, 183 Mass. 333, 67 N. E. 359; Wead v. Omaha, 73 Neb. 321, 102 N. W. 675; State v. Fuller, 39 N. J. Law, 576; Dayton v. Bauman, 66 Ohio St. 379, 64 N. E. 433; Hutcheson v. Storrie, 92 Tex. 685, 51 S. W. 848, 45 L. R. A. 289, 71 Am. St. Rep. 884.

In some of the states there are constitutional provisions which either expressly or by construction are inconsistent with assessments on the frontage basis, or, if such assessments are permitted, they are subject to the requirement that they do not exceed the special benefits to the property assessed. Montgomery v. Moore, 140 Ala. 638, 37 So. 291; Stiewel v. Fencing District, 71 Ark. 17, 70 S. W. 308, 71 S. W. 247; Noonan v. Stillwater, 33 Minn. 198, 22 N. W. 444, 53 Am. Rep. 23; Violett v. Alexandria, 92 Va. 561, 23 S. E. 909, 31 L. R. A. 382, 53 Am. St. Rep. 825. And in still other of the states, either by express statutory provision or by construction adopted by the courts, assessments in proportion to frontage, while recognized and permitted, cannot be assessed without first giving the property owner a right to be heard as to the existence of benefits, and to have the assessment limited to the amount of the benefits conferred. East St. Louis v. Illinois Central Railroad Co., 238 Ill. 296, 87 N. E. 407; Adams v. Shelbyville, 154 Ind. 467, 57 N. E. 114, 49 L. R. A. 797, 77 Am. St. Rep. 484; Hibben v. Smith, 158 Ind. 206, 62 N. E. 447, affirmed, 191 U. S. 310, 24 S. Ct. 88, 48 L. Ed. 195.

[2] The rule thus established in most of the states, whether in response to constitutional limitation or judicial decision, is not different from the holding of the federal courts in subjecting special assessments of taxes on the frontage basis to the limitations of the federal Constitution. In White v. City of Tacoma (C. C.) 109 F. 32, the court, citing the Supreme Court cases, Norwood v. Baker, supra, as qualified by French v. Barber Asphalt Co., 181 U. S. 324, 21 S. Ct. 625, 45 L. Ed. 879, and Wight v. Davidson, 181 U. S. 371, 21 S. Ct. 616, 45 L. Ed. 900, said: "In these several decisions the Supreme Court recognizes the fact that the per front foot plan may be a perfectly fair method of apportioning the burden of paying for street improvements, and that in cases in which it appears that assessments levied according to that plan are not in excess of the benefits to the property assessed, and are equal and fair, so that there is no ground for complaining of actual injustice, the assessments are not necessarily in violation of the Constitution of the United States merely because made according to the front foot plan."

[3, 4] It is competent, however, in cases of special assessments, arising under a general law, to inquire, not only into the matter of discrimination and inequality, but as to the approximate accord between the assessment and the benefits actually derived by the property owners from the improvement. These questions are always open in cases relating to the repaving or repair of streets, where the local authorities act under a statute conferring general discretionary power. The present law is not a legislative adjudication concerning a particular place and a particular plan, but it applies to streets, avenues, and roads generally throughout the District; it is a general prospective law. Nor are the assessments based proportionately upon an ascertained valuation of the properties, as, for example, in the case of Wight v. Davidson, supra. Therefore, in testing the validity of this amendment, we are not dealing with an incidental benefit common to the whole community, or a legislatively determined method of assessing benefits in a particular locality, but with a general law applied to a unique situation, owing to the peculiar manner in which the avenues of the city of Washington are projected. Their diagonal course through the city squares, together with the irregular manner in which many roads are laid out, as, for example, Brentwood road in the present case, result in creating irregular, triangular, fractional blocks, facing upon such roads and avenues.

By reference to the plat, it will be ob-

served that there is a narrow triangular piece of the Small tract situated north of Rhode Island avenue between Fourteenth street and Brentwood road. Starting at the point where these streets converge, and facing the avenue, it has a depth of less than one foot, while its greatest depth at Fourteenth street is less than 50 feet; yet it has a frontage on Rhode Island avenue of about 200 feet, and is assessed per front foot equal to all other property, irrespective of depth, facing the avenue. Square numbered 4022, also a part of the Small tract, is an irregular pentagon. It fronts approximately 100 feet on Fourteenth street, has a frontage of about 500 feet on Rhode Island avenue, by a depth of from 100 to 110 feet to Brentwood Road, on which it fronts about 375 feet, to the intersection of Brentwood road and Franklin street, extending from thence to Fifteenth street approximately 50 feet. It will be observed that, should Brentwood road be paved and a similar frontage assessment be levied against these two slender, irregular blocks, it would result in practical confiscation.

On the other hand, the balance of the Small tract, lying south of Rhode Island avenue, whether treated as farm land or as future city squares, as disclosed and anticipated by the highway plan, presents an even more complex situation than exists on the north side of the avenue. If treated as prospective city blocks, we have, facing Rhode Island avenue, nothing but a series of small triangular blocks, showing even less justification for the assessment than is found on the north side of the avenue. If the Small tract south of the avenue be treated as farm land, the assessment meets with many of the infirmities pointed out in the Knox Case. The evidence adduced at the hearing shows that it has been little, if any, benefited by the improvement on Rhode Island avenue. For farm purposes and the convenience of reaching the city, macadam pavement would meet the requirements equally as well as asphalt pavement. The paving of the avenue with asphalt was an improvement of general public benefit, rather than for the benefit of farm property that may lie adjacent thereto.

In the assessment of taxes on the front foot basis for public improvements, it has been held that, where the tax thus imposed is greatly in excess of the benefits, the assessment will not be sustained. In the case of Brandenburg v. District of Columbia, 205 U. S. 135, 27 S. Ct. 440, 51 L. Ed. 743, the court, reversing a decision of this court, quashed an assessment of benefits against abutting lots for the expense of widening an alley, under a general statute, applicable to the entire District. The statute provided that an alley might be widened under the conditions imposed, either upon petition of the property owners or at the instance of the commissioners; the damages to the real estate and the apportionment of the expense against the abutting property to be determined by a jury impaneled under the provisions of the act. In this case the assessment of benefits was greatly in excess of the value of the lots against which the tax was levied.

The court disposing of the case said: "The law is not a legislative adjudication concerning a particular place and a particular plan like the one before the court in Wight v. Davidson, 181 U. S. 371 [21 S. Ct. 616, 45 L. Ed. 900]. It is a general prospective law. The charges in all cases are to be apportioned within the limited taxing district of a square, and therefore it well may happen, it is argued, that they exceed the benefit conferred, in some case of which Congress never thought and upon which it could not have passed."

Whatever may be the benefit resulting from the improvement to the owners of city lots, improved or unimproved, adjacent to a paved street, it is clear that on no principle of equity or uniformity could the same rule of benefits be applied to a large tract of farm lands similarly situated, especially, as in the present case, where the division of the farm lands into a network of streets and city blocks is anticipated.

In Gast Realty Co. v. Schneider Granite Co., 240 U. S. 55, 36 S. Ct. 255, 60 L. Ed. 526, the court was considering the validity of a tax assessed upon the frontage basis for the repaving of a street in the city of St Louis, Mo. The case, like the present one, involved, among other things, a large tract of unimproved city property, fronting 1,083.88 feet on the street to be improved, out of a total involved in the district of 4,372 feet. This undivided tract extended back approximately 1,000 feet from the west side of Broadway to another street called Church road. The assessment was against the unimproved property facing on Broadway back to a line equally distant between Broadway and Church road. On this basis it appeared that the assessment was against "defendants' tract to a depth of between 400 and 500 feet, while the small lots next to it were included to only about 100 feet, the opposite lots to about 150 feet, and another undivided tract

on the east of Broadway was included by average distance to a depth of 240 feet."

The court held in substance that, while taxing districts, to meet the expense of local improvements, may be created without necessarily encountering the Fourteenth Amendment to the Constitution, and the law does not adopt imaginary exactness in establishing such a district, yet where a district is so formed, or a tax is imposed under a statute where there is no reasonable presumption that substantial justice will be done, and where property owners of necessity will be disproportionately taxed, such a law cannot stand as constitutional. The court further held that the ordinance of St. Louis, in the instant case, providing for the assessment of the part of the cost of paving against the property fronting on the street, based on an area which provided unequal depth of the assessment district, necessarily results in disproportionate taxation, and is equally unconstitutional under the Fourteenth Amendment.

Applying the decision in the Gast Case to the inequalities here encountered, the similarity is apparent. For example, immediately west of the narrow triangular block above shown on the map is block 3956, a part of which has a frontage on Rhode Island avenue of 286 feet, ranging in depth from 261 feet to 386 feet, assessed upon the same frontage basis as the small triangular block.

Where these inequalities exist, the court will intervene to prevent an injustice being perpetrated. Under the method here provided, the assessments, fixed upon a purely arbitrary basis, were imposed without regard to either the relative size or value of the property taxed or the relative value of the benefits to the amount assessed. The property owners affected were afforded neither notice nor a hearing. Indeed, the statute expressly prohibits the granting of a hearing.

In White v. City of Tacoma, supra, the court held that, to justify a special assessment by the front foot plan, such assessment must be equal and fair, and exclude any ground of complaint of actual injustice. It further held that an assessment will be vacated where it appears that the improvement is without any resulting benefit to the property, or where, due to the inability of the courts to eliminate or correct physical conditions, the frontage basis of assessment of benefits may prove inequitable. On this point the court said:

"When a street is graded or paved, the improvement is generally actually beneficial to the property abutting upon it, and the benefit is permanent, so that the owner cannot well say that the cost of the improvement, distributed according to the per front-foot plan, exceeds the benefits. But physical conditions may make a difference, and if, in fact, the benefits to the different lots abutting on improved streets are not approximately equal, then assessments according to that plan are necessarily unequal and unjust. * * * I consider that each case arising under the laws for assessing abutting property to pay for street improvements must depend upon its particular facts. If it appears that an assessment has been levied by competent authority, and that it is fair, and not in excess of the benefits to accrue by reason of the improvements to be paid for, it will be sustained by the courts. It is equally the duty of the courts to restrain the collection of assessments which are shown to be mere attempts to take the property of one for the use of others without compensation to the owner."

Counsel for the District plant themselves upon the decision of the court in Parsons v. District of Columbia, 170 U. S. 45, 18 S. Ct. 521, 42 L. Ed. 943. We think, however, the Parsons Case is not controlling here. In that case the court had under consideration an assessment made under an act of Congress providing that "the commissioners shall have the power to lay water mains and water pipes and erect fire plugs and hydrants whenever the same shall be, in their judgment, necessary for the public safety, comfort or health" (Act June 17, 1890 [26 Stat. 159]), and under a later act it was provided "that hereafter assessments levied for laying water mains in the District of Columbia shall be at the rate of one dollar and twenty-five cents per linear front foot against all lots or land abutting upon the street, road or alley, in which a water main shall be laid" (Act Aug. 11, 1894 [28 Stat. 275]). The court held that "there is a wide difference between a tax or assessment prescribed by a legislative body, having full authority over the subject, and one imposed by a municipal corporation, acting under a limited and delegated authority, and the difference is still wider between a legislative act making an assessment, and the action of mere functionaries, whose authority is derived from municipal ordinances."

The chief contention in the Parsons Case was that the assessment had been imposed against the property in question without notice and a hearing afforded the owner. The court held that, where the Legislature has as-

sumed the prerogative of fixing the amount of the assessment, it was the exercise of a taxing power and the assessment could be imposed without notice to the taxpayer. "On the other hand," the court said, "it is equally well settled that the exercise of the power to assess and collect the public burdens should not be purely arbitrary and unregulated. In each case, therefore, where the party, whose property is subjected to the charge of a public burden, challenges the validity of the law under which it was imposed, it becomes the duty of the courts to closely consider the special nature of the tax and the legislation complained of."

It is urged that there is no distinction between the legislative act of fixing the assessment for water mains at $1.25 per front foot and the legislative act of declaring that one-half the cost of paving a street shall be assessed against the abutting property on the front foot basis. We think there is a clear distinction. In the one instance the extension of water mains is a local improvement almost solely beneficial to the adjoining property, and where the rate of the tax to be assessed is a fixed amount it will be assumed that the Legislature fixed the rate after full consideration of all the circumstances, leaving nothing for the commissioners to do "but to determine the question of the propriety and necessity of laying water mains and water pipes, and erecting fire plugs and hydrants."

But a different rule prevails as to assessments for paving and improving streets. As said in the Gast Case, supra: "The Legislature may create taxing districts to meet the expense of local improvements and may fix the basis of taxation without encountering the Fourteenth Amendment unless its action is palpably arbitrary or a plain abuse. Houck v. Little River Drainage District, 239 U. S. 254, 262 [36 S. Ct. 58, 60 L. Ed. 266]. The front foot rule has been sanctioned for the cost of paving a street. In such a case it is not likely that the cost will exceed the benefit, and the law does not attempt an imaginary exactness or go beyond the reasonable probabilities. * * * But, as is implied by Houck v. Little River Drainage District, if the law is of such a character that there is no reasonable presumption that substantial justice generally will be done, but the probability is that the parties will be taxed disproportionately to each other and to the benefit conferred. The law cannot stand against the complaint of one so taxed in fact. Martin v. District of Columbia, 205 U. S. 135, 139 [27 S. Ct. 440, 51 L. Ed. 743]."

This recent statement of the law by the Supreme Court is in a case holding a special assessment void, though made under an act of the Missouri Legislature creating a charter for the city of St. Louis. In view of this decision, and the other authorities herein cited and discussed, we find no difficulty in distinguishing the Parsons Case from the one at bar.

[5] But this assessment must fail upon a still broader and more equitable ground. The statute is not local in terms, nor is it here invoked to authorize a local improvement affecting specially the people adjacent to the avenue, but an improvement beneficial to the people of the District in general and to the country beyond, in that the repaving of this avenue resulted in the paving of an old established city street, as part of a boulevard scheme connecting Washington and Baltimore. Our attention has not been called to a case where a general repaving act providing for the arbitrary assessment of the expenses, or a portion thereof against the abutting property, regardless of resulting benefits, has been upheld. It may well be that conditions could exist so equitable and fair that an assessment on the front foot plan might be sustained; but to do so there must be a relative equality in the value and depth of the abutting property, and the assessments must not exceed the benefits.

In French v. Barber Asphalt Paving Co., 181 U. S. 324, 21 S. Ct. 625, 45 L. Ed. 879, a frontage assessment for the cost of paving a street was upheld under the following statement of facts: "The work done consisted of paving with asphaltum the roadway of Forest avenue in Kansas City, 36 feet in width, from Independence avenue to Twelfth street, a distance of one-half a mile. Forest avenue is one of the oldest and best improved residence streets in the city, and all of the lots abutting thereon front the street and extend back therefrom uniformly to the depth of an ordinary city lot to an alley. The lots are all improved and used for residence purposes, and all of the lots are substantially on the grade of the street as improved, and are similarly situated with respect to the asphalt pavement. The structure of the pavement along its entire extent is uniform in distance and quality. There is no showing that there is any difference in the value of any of the lots abutting on the improvement."

It further appeared that "the work was done conformably to the requirements of the Kansas City Charter," under an ordinance, published for 10 days in a newspaper, and reserving for 30 days thereafter the right to

the owners of a majority of front feet on the street to be improved "to file a remonstrance with the city clerk against the proposed improvement, and thereby to divest the common counsel of the power to make the improvement." The failure of the property owners to protest justified the presumption of acquiescence in the plan of improvement and the levy of the assessment. In that case the court, in the absence of any showing to the contrary, presumed that the assessments were not in excess of the benefits, a presumption that will be indulged when the facts disclose a situation where the inequality and discrimination are not clearly apparent on the face of the record. The decision in that case clearly rests upon the implied consent of the property owners, because of the failure of a majority to protest, and in view of the lack of physical inequalities. Indeed, the facts there disclosed a typical case for the application of the presumption of acquiescence, equality, and benefits equal to the tax in support of the validity of an assessment on the frontage basis.

Special statutes or ordinances providing for the assessment of benefits equivalent to the cost of the improvement on the frontage basis, where the statute or ordinance relates to an assessment for a local improvement, as, for example, the opening and grading of a street, converting unimproved land into city property, where not grossly unequal or inequitable, will be upheld.

The front foot method of assessment for street improvement, under a general statute, is condemned specially on the theory that it taxes the individual property fronting on the improvement for all or a fixed portion of the expense, to the exemption of all other property in the municipality. It is not a local improvement, beneficial chiefly to the immediate property affected; but a public improvement, the expense of which should be borne by all the property of the community on an equal proportionate basis. To thus tax all or an unequal portion of the burden of the expense of a general public improvement against the property of a single person or a group of persons, to the exemption of the public generally, falls within the constitutional inhibition forbidding the taking of private property for a public use without just compensation.

Cooley, in his work on Taxation (3d Ed.) 1224, condemning the frontage rule when applied to a public street improvement, said: "It considers each lot by itself, compelling each to bear the burden of the improvement in front of it, without reference to any contribution to be made to the improvement of any other property, and it is consequently without any apportionment. From accidental circumstances, the major part of the cost of an important public work may be expended in front of a single lot; those circumstances not at all contributing to make the improvement more valuable to the lot thus specially burdened, perhaps even having the opposite consequence. But, whatever might be the result in particular cases, the fatal vice in the system is that it provides for no taxing districts whatever. It is as arbitrary in principle, and would sometimes be as unequal in operation, as a regulation that the town from which a state officer chanced to be chosen should pay his salary, or that the locality in which the standing army, or any portion of it, should be stationed for the time being, should be charged with its support. If one is legitimate taxation, the other would be."

We are forced to the conclusion that there is no theory on which the legality of this assessment can be sustained. If the paving of Rhode Island avenue be treated as an original improvement, converting a highway into a paved city street, its constitutional infirmities are emphasized by reason of the existence of physical conditions forbidding any equal, fair, or equitable application of the frontage rule of taxing benefits. If considered as a repair of the avenue, in the form of repaving, its validity must be condemned for the additional considerations pointed out, bringing it within the scope of a general city improvement.

The decree is reversed, with costs, and the cause is remanded for further proceedings, not inconsistent with this opinion.