**PHILADELPHIA, B. & W. R. R. v.
HAZEN et al.**

No. 7440.

United States Court of Appeals for the
District of Columbia.

Decided Oct. 14, 1940.

Frederic D. McKenney, John S. Flannery, G. Bowdoin Craighill, and R. Aubrey Bogley, all of Washington, D. C., for appellant.

Elwood H. Seal, Corp. Counsel, and Vernon E. West and Stanley DeNeale, both Asst. Corp. Counsel, all of Washington, D. C., for appellees.

Before STEPHENS, EDGERTON, and RUTLEDGE, Associate Justices.

RUTLEDGE, Associate Justice.

The appeal is from dismissal of a complaint for cancellation of special assessments totalling $2,989.72 levied against plaintiff's property as a result of the repaving of South Capitol Street in Washington, D. C. The principal questions for decision are: (1) whether the assessments are so disproportionate to the benefits conferred on plaintiff's property or so inequitable in relation to assessments on neighboring properties as to be invalid under former decisions of this court;[1] (2) whether plaintiff was denied due process of law by failure to receive notice and a hearing before assessment; (3) whether the assessments constitute a "taking" of plaintiff's property for public use without just compensation within the prohibition of the Fifth Amendment.

The assessed property, known as lot 802 in square 695, has a frontage of 908.07 feet on South Capitol Street and a total area of about 660,265 square feet, or about 15 acres. A government-owned lot has been carved out of its interior, and it is otherwise somewhat irregular in

[1] Johnson v. Rudolph, 1926, 57 App.D. C. 29, 16 F.2d 525; Taliaferro v. Railway Terminal Warehouse Co., 1930, 59 App.D.C. 376, 43 F.2d 271; Dougherty v. American Security & Trust Co., 1930, 59 App.D.C. 301, 40 F.2d 813; Dougherty v. Heurich, 1930, 59 App.D.C. 303, 40 F.2d 815; Crosby v. Dodge, 1931, 60 App.D.C. 36, 46 F.2d 727; Gotwals v. Miller, 1932, 61 App.D.C. 402, 59 F.2d 1051; Willner v. Hazen, 1940, 71 App.D. C. 373, 111 F.2d 511.

shape. Plaintiff's lessee uses it principally as a freight yard.

By Act of February 25, 1929, 45 Stat. 1269, 1272, Congress authorized the repaving of South Capitol Street, together with many other specific projects, and provided: "That assessments in accordance with existing law shall be made." Pursuant to this authority, the street was repaved in October, 1929, with 8-inch concrete, replacing a granite block paving originally laid in 1903. In September, 1930, plaintiff's lot was assessed, on the basis of linear frontage, $2,964.13 for the paving,[2] and $383.81 for curbing.[3] February 20, 1931, Congress passed a new assessment statute, and ordered cancellation of all assessments for roadway improvements made within the preceding three years [D.C.Code (Supp. V) tit. 12, § 90k] and reassessment on the basis of the new statute (Id. §§ 90a–90m).

The pertinent provisions of the statute are:

That half the cost of paving or repaving shall be assessed against abutting property "according to the linear frontage of said property." (Id. § 90a.)

"The maximum linear front foot assessment levied hereunder shall not exceed $3.50 per linear front foot. The total assessment levied hereunder against any abutting property shall not exceed the number of square feet of area of said property multiplied by 1 per centum of the linear front foot assessment, and shall not exceed 20 per centum of the value of the said abutting property, exclusive of improvements thereon, as assessed for the purpose of taxation at the time of the paving or repairing of the street, avenue, or road for which said assessment is levied. In computing assessments hereunder against unsubdivided land by the square foot or according to the assessed valuation, there shall be excluded from the computation land lying back more than one hundred feet from the street, avenue, or road being improved where the depth is even; where the depth is uneven, the average depth shall be taken in computation, but not to exceed one hundred feet." (Id. § 90d.)

"Any property owner, aggrieved by any assessment levied under sections 90a–90m of this title, may, within sixty days after service of notice of such assessment, file with the Commissioners of the District of Columbia a protest in writing against such assessment, accompanied by affidavits if he so desires, and if said commissioners find that the property of such owner so protesting is not benefited by the improvement for which said assessment is levied, or is benefited less than the amount of such assessment, or is unequally or inequitably assessed with relation to other property abutting such improvement, said commissioners shall abate, reduce, or adjust such assessment in accordance with such finding." (Id. § 90j.)

Under this statute the old assessments were cancelled, and new assessments of $2,964.13 for paving and $88.82 for curbing were made. The aggregate of these assessments was later reduced to $2,989.72, the amount here involved.

Plaintiff protested to the Commissioners against the assessment, and the protest was denied after hearing, July 26, 1935. Plaintiff then began this action. The trial court found that plaintiff's property was presumptively benefited by the improvement, that plaintiff had failed to overcome this presumption, that its property was in fact benefited, and that the assessments were not unequal or inequitable.

I.

A question of first importance is whether the statutes authorizing the improvement of South Capitol Street and the levying of the present assessments amount to a determination by Congress that plaintiff's property is benefited at least to the extent of the assessments. Where "within the scope of its power, the legislature itself has found that the lands * * * will be specially benefited by the improvements, prior appropriate and adequate inquiry is presumed, and the finding is conclusive."[4] If there is here a legislative determination of benefit, it is clear that there need be no notice or hearing as to benefits before assessment.[5] The scope of

---

[2] Pursuant to D.C.Code (1929) tit. 12, §§ 80, 81.

[3] Pursuant to D.C.Code (1929) tit. 12, § 76.

[4] Chesebro v. Los Angeles County Flood Control District, 1939, 306 U.S. 459, 464, 59 S.Ct. 622, 624, 83 L.Ed. 921.

[5] Parsons v. District of Columbia, 1898, 170 U.S. 45, 18 S.Ct. 521, 42 L.Ed. 943; French v. Barber Asphalt Paving Co.,

judicial review, if existent, is limited of course to determining whether the statutory method of assessment "is palpably arbitrary and a plain abuse" in its application to a particular taxpayer.[6] We think that Congress in the present statutes has determined both the fact and the amount of benefits to plaintiff's property and therefore there was no necessity for notice and hearing before assessment.

■■■ Where the statute clearly designates the property which will or may abut the improvement and specifies the rate of assessment, it is a legislative finding of benefit to the extent of the rate. Withnell v. Ruecking Construction Co., 1919, 249 U.S. 63, 39 S.Ct. 200, 63 L.Ed. 479. Plaintiff seems to contend that the property must be within a small area and specifically described in the statute itself, and that the rate must be expressed in specific figures. Cf. Johnson v. Rudolph, 1926, 57 App.D.C. 29, 16 F.2d 525. The controlling authorities do not sustain this contention. Designation of the property to be benefited may be in terms of an entire city or perhaps an even larger geographical unit.[7] The rate of assessment may be stated specifically in figures.[8] But the statute is nonetheless a determination of the existence and the amount of benefit if it requires that all or a certain proportion of the cost of the improvement shall be assessed against the abutting property according to frontage, area or assessed valuation.[9] The fixing of a maximum monetary rate of assessment has the same effect. Houck v. Little River Drainage District, 1915, 239 U.S. 254, 36 S.Ct. 58, 60 L.Ed. 266. Thus, if the legislature has described an area within which improvements may be made, and has specified a method of assessment which calls for merely mathematical computations by some administrative agency, the statute amounts to a determination that benefits are conferred on the assessed property and that they are at least equivalent to the assessments, even though the administrative agency may retain the power to decide where within the area a specific improvement shall be made, how the work shall be done, what it shall cost, and like matters.[10]

One question therefore which must be determined is whether Congress has defined or designated in the statutes the district or area within which the improvements in question were to be made. We think there can be no question that it has done so. The Act of February 25, 1929, 45 Stat. 1269, 1272, authorized the repaving of specified portions of South Capitol Street, together with many other specific projects, and provided that "assessments in accordance with existing law shall be made." The effect of the statute was to

---

1901, 181 U.S. 324, 21 S.Ct. 625, 45 L. Ed. 879; Wight v. Davidson, 1901, 181 U.S. 371, 21 S.Ct. 616, 45 L.Ed. 900; Wagner v. Leser, 1915, 239 U.S. 207, 36 S.Ct. 66, 60 L.Ed. 230; Withnell v. Ruecking Construction Co., 1919, 249 U.S. 63, 39 S.Ct. 200, 63 L.Ed. 479; Hancock v. Muskogee, 1919, 250 U.S. 454, 39 S.Ct. 528, 63 L.Ed. 1081; Valley Farms Co. v. Westchester, 1923, 261 U.S. 155, 43 S.Ct. 261, 67 L.Ed. 585; Chesebro v. Los Angeles County Flood Control District, 1939, 306 U.S. 459, 59 S.Ct. 622, 83 L.Ed. 921.

6 Houck v. Little River Drainage District, 1915, 239 U.S. 254, 262, 36 S.Ct. 58, 60 L.Ed. 266; Gast Realty & Investment Co. v. Schneider Granite Co., 1916, 240 U.S. 55, 36 S.Ct. 254, 60 L.Ed. 523; Withnell v. Ruecking Construction Co., 1919, 249 U.S. 63, 39 S.Ct. 200, 63 L.Ed. 479; Hancock v. Muskogee, 1919, 250 U.S. 454, 39 S.Ct. 528, 63 L.Ed. 1081; Valley Farms Co. v. Westchester, 1923, 261 U.S. 155, 43 S.Ct. 261, 67 L.Ed. 585; Chesebro v. Los Angeles County Flood Control District, 1939, 306 U.S. 459, 59 S.Ct. 622, 83 L.Ed. 921.

7 Parsons v. District of Columbia, 1898, 170 U.S. 45, 18 S.Ct. 521, 42 L.Ed. 943; French v. Barber Asphalt Paving Co., 1901, 181 U.S. 324, 21 S.Ct. 625, 45 L. Ed. 879; Wagner v. Leser, 1915, 239 U.S. 207, 36 S.Ct. 66, 60 L.Ed. 230. Cf. Louisville & N. R. R. v. Barber Asphalt Paving Co., 1905, 197 U.S. 430, 25 S.Ct. 466, 49 L.Ed. 819.

8 Parsons v. District of Columbia, 1898, 170 U.S. 45, 18 S.Ct. 521, 42 L.Ed. 943; Wagner v. Leser, 1915, 239 U.S. 207, 36 S.Ct. 66, 60 L.Ed. 230.

9 French v. Barber Asphalt Paving Co., 1901, 181 U.S. 324, 21 S.Ct. 625, 45 L. Ed. 879; Wight v. Davidson, 1901, 181 U.S. 371, 21 S.Ct. 616, 45 L.Ed. 900; Louisville & N. R. R. v. Barber Asphalt Paving Co., 1905, 197 U.S. 430, 25 S. Ct. 466, 49 L.Ed. 819; Valley Farms Co. v. Westchester, 1923, 261 U.S. 155, 43 S.Ct. 261, 67 L.Ed. 585; Chesebro v. Los Angeles County Flood Control District, 1939, 306 U.S. 459, 59 S.Ct. 622, 83 L. Ed. 921.

10 Parsons v. District of Coulmbia, 1898, 170 U.S. 45, 18 S.Ct. 521, 42 L.Ed. 943; and see the cases cited supra notes 7, 9.

specify not only the "area within which" the improvement should be made, but also its exact location. The provision for assessments "in accordance with existing law" incorporated the provisions of the existing statutes into the Act or those of the Act into the existing laws, as one may prefer to regard the legislative fusion. In either event, the total effect of the legislation was to fix with particularity the location of the improvement and of the property to be benefited. Taking account both of the designation of specific parts of South Capitol Street in the Act of February 25, 1929, and of the provisions in the "existing law" for assessments, specifying the abutting property in cases of street paving and curbing, no one could mistake the property which Congress intended to be assessed or to specify as being benefited by the improvement. Nothing remained to be done by administrative action to identify the property. Greater particularity would not have been achieved if the area had been described in the statute by metes and bounds.

■ The definiteness and sufficiency of the Congressional designation are not affected by the fact that the "existing law" in 1929 regarding assessments, known commonly as the Borland Amendments, was replaced by the Act of February 20, 1931, 46 Stat. 1197, §§ 90a–90m, D.C.Code (Supp. V) tit. 12, §§ 90a–90m. This Act, among other things, directed the Commissioners of the District to cancel all assessments for roadway improvements completed within three years prior to the date of approval of the Act and to reassess the cost of such improvements in accordance with the provisions of the new law. The improvements in question came within the statutory direction and accordingly the assessments made under the previous statutes were cancelled, and new assessments were made upon plaintiff's property in accordance with the new law. The Act of 1931, by directing the cancellation of the assessments under the previous law and the making of new ones, adopted and carried forward into the new assessments the description of the property contained in the previously existing statutes and the assessments made thereunder. The Act of 1931 was intended primarily to make changes in the methods and amounts of the assessments, not in the identity of the property to be assessed.

Furthermore, Congress has set up a method of assessment which requires only mathematical computation for its application.[11] The present statute therefore finds, in effect, that all abutting land is benefited to the extent of $3.50 per linear foot, 20% of its assessed valuation (to an average depth of 100 feet if unsubdivided), or its area (to an average depth of 100 feet if unsubdivided) multiplied by 1% of the front foot assessment, whichever is least. It is not necessary that the statute expressly state the finding of benefit. "It must be presumed that, by designating * * * the improvements authorized to be transferred, the legislature found that the entire flood control district would be specially benefited by the acquisition. * * * The finding thus implied is as fully effective as if declared in express terms in the act itself. * * * The legislature need not adopt any form of statement or finding * * *." Chesebro v. Los Angeles County Flood Control District, 1939, 306 U.S. 459, 462, 464, 59 S.Ct. 622, 624, 83 L.Ed. 921.

■ The provision for "protest" to the Commissioners does not contradict or negative the finding. It is merely a recognition that in unusual situations application of the general method of assessment may be inequitable. It is to this extent a safeguard against conclusive operation of the statute without regard to abnormal circumstances which may affect particular property. It clearly places the burden upon the owner of property assessed to show that such circumstances exist in respect to his property. That could rarely occur so as to relieve the property entirely from assessment, in view of the nature of the improvement, the fact that the property assessed is limited to abutting property and the legislative declaration that such property is benefited at least to the extent of the maximum assessment fixed by the statute. Obviously the instances in which the protest procedure would be successful would be more numerous when used to secure reduction in the assessment because of inequality than when employed to nullify it. Rarely would a situation arise in which property abutting a street improvement of this character could be found to receive no benefit whatever, although the amount of benefit might vary considerably among parcels of irregular shape and not of uniform size.

---

11 Cf. note 9 supra, and Houck v. Little River Drainage District, 1915, 239 U. S. 254, 36 S.Ct. 58, 60 L.Ed. 266.

## II.

■ It remains to decide whether the application of the statutory method of assessment to plaintiff's property is so arbitrary or unreasonable as to require the court to set aside the assessment and the Commissioners' finding that it is proper, assuming that the court has such power. We agree with the Commissioners and the trial court that plaintiff has failed to prove that its property was not benefited. Plaintiff's chief reliance seems to be on the theory that property now used largely as a freight yard cannot be benefited by improving the pavement on which it abuts. It is argued that the old granite block pavement was adequate for the trucks which travelled to plaintiff's freight yard over South Capitol Street, and that therefore substitution of concrete paving conferred no benefit. We do not think that the court may "weigh the consideration" with such nicety as plaintiff requests. Cf. Louisville & N. R. R. v. Barber Asphalt Paving Co., 1905, 197 U.S. 430, 433, 25 S.Ct. 466, 49 L.Ed. 819. It is settled that railroad property may be benefited by improving a street on which it abuts even though its present use may not be facilitated.[12]

"The plea plainly means that the improvement will not benefit the lot, because the lot is occupied for railroad purposes and will continue so to be occupied. * * * That, apart from the specific use to which this land is devoted, land in a good-sized city generally will get a benefit from having the streets about it paved, and that this benefit generally will be more than the cost, are propositions which * * * a legislature is warranted in adopting. But, if so, we are of opinion that the legislature is warranted in going one step further and saying that on the question of benefit or no benefit the land shall be considered simply in its general relations and apart from its particular use. * * * On the question of benefits the present use is simply a prognostic, and the plea a prophecy. If an occupant could not escape by professing his desire for solitude and silence, the legislature may make a similar desire fortified by structures equally ineffective. It may say that it is enough that the land could be turned to purposes for which the paving would increase its value." 197 U.S. at pages 434, 435, 25 S.Ct. at page 467, 49 L. Ed. 819.

■ Present use therefore is not an exclusive or conclusive criterion of benefit. It is merely a factor to be considered, in connection with other factors including possible uses present and future, primarily to determine whether an assessment is confiscatory. This appears not only from the Supreme Court decisions but from our own. Stress is placed in argument in this respect upon Johnson v. Rudolph, 1926, 57 App.D.C. 29, 16 F.2d 525. That case involved farm lands which were assessed for paving appropriate for urban streets. But other factors were equally, if not more, important in the decision, including the irregular shapes of particular tracts when the whole was regarded as subdivided property. The decision was based upon several grounds and cannot be regarded as requiring that benefit be determined only in relation to present actual use, without regard to other possible use present or future, increment in value of the property without reference to any specific use, and other factors. So to regard the decision would bring it squarely in conflict with the Supreme Court decisions to which we have referred and require that it be disapproved to that extent. But that it is not so interpreted appears clearly from Willner v. Hazen, 1940, 71 App.D.C. 373, 111 F.2d 511. In reversing an order dismissing a complaint to cancel an assessment for alley paving against abutting property as unreasonably disproportionate and greater than the benefit derived, we referred both to the fact that the assessment was 222% higher than the average assessment against other lots bounding on the alleys, and also to the provisions of the zoning law, under which "appellants cannot use their land for commercial enterprise, and it is not possible for them to recoup the excess of the assessment by changing the nature of the improvement." We further said, "the amount of the assessment is wholly disproportionate to any use to which the lot is susceptible by reason of the improvement," and distinguished the case on this ground from Carusi v. Hazen, 1935, 64 App.D.C. 194, 76 F.2d 444. These decisions, as well as our discussion of Rudolph v. Johnson in the

---

[12] Louisville & N. R. R. v. Barber Asphalt Paving Co., 1905, 197 U.S. 430, 25 S.Ct. 466, 49 L.Ed. 819. Cf. Valley Farms Co. v. Westchester, 1923, 261 U.S. 155, 43 S.Ct. 261, 67 L.Ed. 585.

Willner case, show clearly that we have not excluded other possible uses than that presently and actually made from consideration in determining either the existence or the amount of benefit. To do so would be in effect to leave it to the landowner to decide whether his land could be assessed for any public improvement, as he might prefer to put it to no use whatever.

Furthermore, entirely aside from the possible future use of plaintiff's lot, we cannot say that the property is not benefited by the improved means of transportation to and from the freight yard. Certainly we cannot overturn the findings of the Commissioners and the trial court that the property was benefited. It can make no difference that the benefit may not be reflected immediately in the market value of the land. That fact alone, if existent, would not overcome the strong statutory presumption of benefit.

The evidence shows that streets are required for access to plaintiff's property which can withstand the heavy hauling of freight in trucks to and from the yards. The new paving is of that type, whereas the old was of granite blocks set in a sand base, laid in 1903 and designed for horse-drawn traffic. Under the impact of the heavy hauling required by motor-driven traffic, the old pavement created the necessity for constant repair and upkeep at excessive expense to the District. The net effect was that the public was supplying the plaintiff with means of ingress and egress at no cost to itself and at excessive cost to the public. On these facts, considered in connection with the statutory presumption and other evidence, the trial court's finding of benefit, and that of the Commissioners, were adequately sustained. Plaintiff did not overcome the statutory finding or this evidence by showing that trucks had succeeded in negotiating the bumps in the old paving and that the District could keep it in passable condition by constant repairs at great expense. Nor was it sufficient to do so that real estate experts testified there was no benefit for the present railroad usage. Their testimony was based upon the fallacy which plaintiff has advanced here, that only present, actual use can be considered, and it disregarded the necessities of heavy motorized traffic, which has developed since the original paving was laid.

Plaintiff's property is not "unequally or inequitably assessed with relation to other property abutting" the improvement. Because other lots adjacent to South Capitol Street belonged to the Government or were found to abut on another street, only one lot other than plaintiff's was assessed for the improvement. This was a lot owned by Standard Oil Company, having a frontage of 235 feet and a depth of 351.33 feet. It is not seriously suggested that the other lots should have been assessed or that failure to assess them placed an unjust burden on plaintiff's property. Therefore plaintiff must fail unless it can show that its assessment is inequitable as compared with that made upon the Standard Oil lot. We cannot speculate as to what inequalities might have existed had the other lots been assessable; plaintiff's case must rest on the facts, not on speculations. In total area plaintiff's lot is over eight times as large as the Standard Oil lot, whereas its frontage is less than four times as great. Since the assessment was according to frontage, the discrimination, if any, would seem to favor plaintiff if, as plaintiff contends, area must be considered in determining relative benefit.[13] But we need not decide whether a favorable discrimination disqualifies plaintiff from attacking the assessment for inequality,[14] for it was conceded in the argument that the portion of plaintiff's lot which is separated from the rest by the government-owned lot is immaterial to this controversy. As the portion of plaintiff's lot which is immediately adjacent to the street is 240.48 feet in depth, it was assessed more in proportion to area than was the Standard Oil lot. Plaintiff says this is inequitable, apparently taking the view that a lot is necessarily benefited to its full depth, however great that may be, and that the benefit to the farthest square foot of area is as great as to that nearest the improvement. Since propinquity to the improvement is the apparent basis for finding a benefit, it appears not illogical to accept the view that the land nearest the improvement receives the greatest benefit. In the present legislation Congress has apparently determined

---

[13] Cf. the cases cited supra note 1. But cf. the opinion on petition for rehearing in Willner v. Hazen, 1940, 71 App.D.C. 373, 111 F.2d 511.

[14] Cf. Withnell v. Ruecking Construction Co., 1919, 249 U.S. 63, 71, 72, 39 S.Ct. 200, 63 L.Ed. 479, with Crosby v. Dodge, 1931, 60 App.D.C. 36, 46 F.2d 727.

that abutting land in the District of Columbia is benefited primarily to a depth of 100 feet. It has fixed maxima which plaintiff concedes will remedy inequalities in total assessments where lots are less than 100 feet in depth. Where lots are unsubdivided, their area is computed only to an average depth of 100 feet in determining their assessed valuation and the maximum total assessment which may be applied to them. And it may be assumed to be true, as plaintiff asserts, that the maxima will rarely if ever affect the assessment of a lot over 100 feet deep.[15] This amounts substantially to a finding by Congress that the benefits of an improvement of a street are conferred primarily on land within 100 feet of the improvement. It cannot be said that this is obviously erroneous or unreasonable or beyond the legislative power. In this view, the portion of plaintiff's lot which was chiefly benefited and assessed has exactly the same depth as the corresponding portion of the Standard Oil lot, similarly benefited and assessed. There is therefore no substantial discrimination in this respect.

■ But even if there were some inequalities in the respective areas of the assessed properties we could not conclude that the assessments are invalid. Plaintiff seems to think there is something inherently unconstitutional about the so-called "front foot rule." The contrary is the law. Assessment according to frontage has been upheld repeatedly by the Supreme Court,[16] has been preferred to area assessment,[17]

and has even been used as a standard of constitutionality.[18] It is clear also from that Court's decisions that lots assessed by this method are not required to be of uniform size and shape.[19] The decisions of this court[20] do not require such exact uniformity as is contended for by plaintiff. The gross inequalities disclosed in the cases which have been before this court in the past presumably have been remedied, at least so far as legislation reasonably can do with respect to street improvements, by the maxima set up in the present legislation and the provision for hearing on protest. At any rate plaintiff has not shown that they exist in this case. That they may exist in some other case not now before us does not render the statute invalid in its application to the present one.

### III.

■ Plaintiff suggests that the paving of South Capitol Street is a "public improvement," not a "local improvement," and that therefore assessing its property is taking "private property * * * for public use without just compensation." The contention is so patently unsound as to require no discussion. Obviously the improvement of any public street benefits the public, but it does not follow that the abutting landowner is not also specially benefited. Otherwise, no assessment against abutting property could be sustained. The language in Johnson v. Rudolph, 1926, 57 App.D.C. 29, 16 F.2d 525, relied on by plaintiff, must be considered in the light of the decision in that case, which was that

---

15 This is illustrated by plaintiff's calculation that the first maximum (1% of the front foot assessment times the area in square feet) would have permitted an assessment of $23,109.28 in the instant case, and that the second maximum (20% of the assessed valuation) would have permitted an assessment of $158,463.60. As a matter of fact, it would appear that the first maximum never could be effective except where a lot is less than 100 feet in average depth, 100 feet being the exact point at which it loses its remedial power. This further emphasizes the conclusion that Congress means the benefit to extend primarily for 100 feet in the normal case, for only where the property is of extremely low valuation can the second maximum lower the assessment on a lot over 100 feet in average depth.

16 Parsons v. District of Columbia, 1898, 170 U.S. 45, 18 S.Ct. 521, 42 L.Ed. 943; French v. Barber Asphalt Paving Co., 1901, 181 U.S. 324, 21 S.Ct. 625, 45

L.Ed. 879; Gast Realty & Investment Co. v. Schneider Granite Co., 1916, 240 U.S. 55, 36 S.Ct. 254, 60 L.Ed. 523; Schneider Granite Co. v. Gast Realty & Investment Co., 1917, 245 U.S. 288, 38 S.Ct. 125, 62 L.Ed. 292; Withnell v. Ruecking Construction Co., 1919, 249 U.S. 63, 39 S.Ct. 200, 63 L.Ed. 479.

17 Gast Realty & Investment Co. v. Schneider Granite Co., 1916, 240 U.S. 55, 36 S.Ct. 254, 60 L.Ed. 523; Schneider Granite Co. v. Gast Realty & Investment Co., 1917, 245 U.S. 288, 38 S.Ct. 125, 62 L.Ed. 292.

18 Withnell v. Ruecking Construction Co., 1919, 249 U.S. 63, 72, 39 S.Ct. 200, 63 L.Ed. 479.

19 Gast Realty & Investment Co. v. Schneider Granite Co., 1916, 240 U.S. 55, 36 S.Ct. 254, 60 L.Ed. 523; Withnell v. Ruecking Construction Co., 1919, 249 U.S. 63, 39 S.Ct. 200, 63 L.Ed. 479.

20 Cited supra note 1.

most of the abutting property was not benefited by the particular kind of paving and the rest was invalidly assessed. The peculiar circumstances existing there, to which we have referred, do not exist in the present situation.

Finally, we may add that in the absence of clear showing of inequality and inequity, we have been unable to find confiscation in an assessment of less than $3,000 against property assessed for general taxation at a value in one recent year of $660,265 and in another of $792,318, for an improvement so obviously beneficial, if not necessary, to the extensive commercial operations conducted upon it.

We conclude that plaintiff's property has been benefited by the improvement, that the benefit has not been shown to be less than equivalent to the assessment, and that the assessment is not unequal or inequitable. In this view we need not decide to what extent, if at all, the court may interfere to set aside conclusions of the Commissioners of the District in these respects, now that Congress has created a specific administrative remedy by "protest" to them.

The judgment of the trial court is affirmed.

STEPHENS, Associate Justice, concurs in the result.